Siberry v. The State.

SIBERRY v. THE STATE.

[No. 17,161.    Filed March 1, 1895.    Rehearing denied April 21, 1896.]

CRIMINAL LAW.—*Indictment.—Misjoinder of Counts.—Appeal.*—The question as to whether there can be a joinder, in the same indictment, of two counts, one for murder and the other for involuntary manslaughter, cannot be presented on appeal, where the record does not show a motion to quash to have been made. *p. 687.*

APPEAL AND ERROR.—*On Second Appeal the Record of First Not Available to Disclose Error.*—On a second appeal of the same case, the record of the first appeal cannot be considered for the purpose of discovering erroneous rulings of the trial court. *pp. 687, 688.*

CRIMINAL LAW.—*Homicide.—Evidence.*—Where an indictment is in two counts, one charging murder in the first degree and the other charging involuntary manslaughter, evidence showing that the killing was intentional is admissible. *p. 688.*

APPEAL.—*Bills of Exception.—Motion for New Trial.*—Statements contained in a motion for a new trial as to alleged errors must be shown to be true by proper bills of exception, or they will not be considered on appeal. *p. 689.*

SAME.—*Appellant's Counsel Must Cite Page and Line of Record*

Siberry v. The State.

. *Where Ruling is Found.* — The Supreme 'Court will not search the record to find alleged rulings of the trial court where there has been a failure on the part of appellant's counsel to cite pages and lines of record as required by rule twenty-six of the Supreme Court. *p. 689.*

CRIMINAL LAW.—*Homicide.—Evidence.*—On a prosecution of a husband for the killing of his wife, under an indictment charging murder in the first degree in one count, and involuntary manslaughter in another, the admission of evidence showing that deceased was true to her husband is not reversible error where the conviction is for involuntary manslaughter. *pp. 689, 690.*

APPEAL.—*Error Should be Assigned in Motion for New Trial.*—Error in the finding of the trial court, to be available on appeal, should be assigned as error in the motion for a new trial. *p. 690.*

EVIDENCE.—*Shorthand Reporter as Witness.—Cross-examination.*— Where a shorthand reporter is called as a witness and testifies as to the testimony of a particular witness on another trial of the same case, the cross-examination of such shorthand reporter must be confined .to the particular evidence given by him in his examination in chief, or such as is explanatory thereof. *pp. 690, 691.*

APPEAL AND ERROR.—*Criminal Law.—Preponderance of Evidence.*— The Supreme Court will not reverse a conviction by the trial court, even though the preponderance of the evidence was against the verdict, if that part of the evidence supporting the verdict is legally sufficient to establish all the essential facts to constitute the crime with which the defendant was found guilty. *p. 691.*

SAME.—*Exception.—Presumptions.*—To be available on appeal it must appear affirmatively that the ruling of the court excepted to was actually made, as the Supreme Court will adopt the presumption that upholds the judgment upon which the appeal is prosecuted. *pp. 691-693.*

INSTRUCTIONS.—*Refusal to Give.*—No error is committed in refusing to give requested instructions which were substantially given by the court of its own motion. *p. 694.*

JURY.—*Disqualification of Juror.—Reading Newspaper Accounts of Former Trial.*—To render a juror incompetent on account of having read newspaper accounts of a former trial of the cause it must be shown that the account read was a report of the evidence. *pp. 694, 695.*

CRIMINAL LAW.—*Drawing Deadly Weapon.— Statute Construed.*— To constitute a violation of section 2068, Burns' R. S. 1894 (1984, R. S. 1881), making it a crime to draw a dangerous or deadly weapon, it need not be shown that the person intended using the weapon on the person upon whom it was drawn, but is in the purview of said section if it is shown that the weapon was drawn in such manner

that it might be used to his injury, as to point the muzzle of a gun or revolver at another. *pp. 696, 697.*

CRIMINAL LAW.— *Involuntary Manslaughter.— Unlawful Act.*— To constitute the crime of involuntary manslaughter while committing the unlawful act of drawing or pointing a revolver at the person killed, in violation of section 2068, Burns' R. S. 1894 (1984, R. S. 1881), it need only be shown that defendant intentionally pointed the muzzle of the revolver at such person. *pp. 697, 698.*

INSTRUCTION.—*Reasonable Doubt.—Inaccurate Definition.—Harmless Error.—Criminal Law.*—In order to justify the reversal of a case on the ground that the court in its instruction gave an inaccurate definition of reasonable doubt, it must plainly appear that defendant was prejudiced in his substantial rights thereby. *pp. 701, 702.*

APPEAL AND ERROR.— *Rehearing.— Questions Presented for First Time.*—Questions cannot be presented for the first time in a petition for a rehearing. *p. 702.*

JURY.—*Challenge for Cause.—Peremptory Challenge.—Harmless Error.— Criminal Law.*— Where the court overrules defendant's challenge made to two jurors for cause, and such jurors were afterward excused on defendant's peremptory challenge and defendant went to trial without exhausting all of his peremptory challenges, such ruling did not prejudice the substantial rights of defendant and was harmless. *p. 703.*

INSTRUCTIONS.—*Weight of Evidence.—Criminal Law.*—An instruction to the jury in the trial of a person charged with manslaughter, to the effect that the jury might consider statements made by defendant that he committed the homicide as strong proof against defendant in determining the fact as to whether he did commit the homicide or not was not such an invasion of the right of the jury to determine the weight of the evidence as would amount to reversible error, where the defendant admitted the killing, and other instructions were given defining criminal homicide. *p. 704.*

NEW TRIAL.—*Cruel and Excessive Punishment Not Ground For.— Criminal Law.*—Cruel and excessive punishment is not a statutory ground for a new trial. *p. 705.*

CRIMINAL LAW.—*Cruel and Excessive Punishment.*—The Supreme Court cannot say that the punishment assessed by the jury in the trial of a criminal cause is excessive where the punishment is fixed within the limits of the statute. *p. 706.*

From the Wells Circuit Court. *Affirmed.*

*Levi Mock, Abram Simmons* and *E. L. Watson,* for appellant.

*W. A. Ketcham,* Attorney-General, and *A. G. Smith,* for State.

McCabe, C. J.—The appellant was prosecuted by indictment, in the Wells Circuit Court, in which there were two counts, one charging him with murder in the first degree, and in the second with involuntary manslaughter, in the killing of his wife, Emma Siberry. On a plea of not guilty he was found guilty of involuntary manslaughter, as charged in the second count, and his punishment was fixed by the jury at imprisonment in the state prison for fifteen years. The court rendered judgment upon the verdict. Upon appeal to this court that judgment was reversed on account of error in the instructions of the court, and a new trial was ordered. *Siberry* v. *State*, 133 Ind. 677. Among the errors assigned on that appeal was the action of the court in overruling the motion of the appellant to quash the indictment. That error was not passed on in that appeal. On remanding the cause the new trial resulted in another verdict of guilty of involuntary manslaughter, fixing the punishment at twelve years imprisonment in the state prison, on which the trial court rendered judgment over appellant's motion for a new trial and in arrest of judgment.

Among the matters assigned here for error is the action of the trial court in overruling appellant's motion to quash the indictment. The objection urged to the indictment is that a count for murder cannot be joined with one charging, as here, involuntary manslaughter. But we find no motion to quash in the record, and no ruling thereon, hence the question of the propriety of uniting a count for murder with a count for involuntary manslaughter in the same indictment is not presented to this court by the assignment of error. There may have been such a motion overruled before the case came to this court on the former appeal, but the present record does not show it. The report of the former appeal cited above shows that to

have been the case. But the errors assigned on this appeal must be made apparent on the face of the record on this appeal. All the record after the return of the indictment to the return of the case from this court to the trial court seems to have been omitted from the transcript in this appeal. Appeals are heard upon the record and by the record determined. Errors must be manifest on the face of the record. It is the duty of a party who asks an appellate tribunal to reverse the judgment of a trial court to bring a perfect record to the appellate court, making the error he assigned apparent on the face thereof, so that the appellate court can find in the record the proof of the complaint made in the assignment of errors. The appellate tribunal can look nowhere else for such proof. Elliott's App. Proc., section 186, and authorities there cited. But the statute seems to authorize counts for murder in the first and second degrees and manslaughter to be joined in the same indictment or information. Section 1814, Burns' R. S. 1894 (1745, R. S. 1881); Powers v. State, 87 Ind. 144.

There was testimony of several witnesses introduced by the State on the trial, over the appellant's objection, tending to show ill feeling of the appellant toward the deceased during their marriage relation. It is contended this was error inasmuch as its tendency was to prove intention and motive to kill her on the part of the appellant, and the jury having found him guilty only of involuntary manslaughter in which there can be no intention to kill. The proposition furnishes its own refutation. Because no matter how strong it tended to prove an intentional killing, yet the verdict proves that it did not harm appellant, because the jury found that no such intention existed. Such testimony might possibly have been inadmissible had there been no other count than the second,

charging nothing but involuntary manslaughter, but the first count charged murder in the first degree, making evidence of an intentional killing admissible. It was the right of the State to try to prove that count if it could. This same class of testimony was held by this court to have been rightly admitted on the former appeal. *Siberry* v. *State*, 133 Ind. 677.

It is next complained that the court permitted the State to prove by the witness John Coons that he remained at the house of Mr. Campbell, where the killing occurred, under the direction of the sheriff, to guard the appellant the night after the homicide, of which direction and purpose the appellant was wholly ignorant. Counsel in their brief refer us to the page and lines of the record where it is claimed this ruling may be found. On turning to that place in the record we find such a ruling stated, but is simply so recited in the motion for a new trial. Such recitals must be shown to be true by the record outside of the motion for a new trial, or by bill of exceptions. *Indianapolis, etc., Mfg. Co.* v. *First Nat'l Bank*, 33 Ind. 302; *Skillen* v. *Skillen*, 41 Ind. 122; *Hopkins* v. *Greensburg, etc., Turnpike Co.*, 46 Ind. 187; *Vawter* v. *Gilliland*, 55 Ind. 278; *Hyatt* v. *Clements*, 65 Ind. 12; *Clouser* v. *Ruckman*, 104 Ind. 588; *Deal* v. *State*, 140 Ind. 354. If there is such a ruling in the record, rule twenty-six of this court requires the appellant's counsel to cite the pages and lines of the record where it may be found. We have often held where that was not done we would not search the record to find such error. The record here contains nearly 850 pages.

It is next urged that the court erred in admitting the evidence of William H. Wilson over the appellant's objection in answer to the question whether he had ever during the marriage relation of appellant and his

wife, kept her company. The answer was, "No, sir." The objection to the admission of the evidence stated was that it was irrelevant, incompetent, and immaterial. We are inclined to think that the evidence was subject to that objecton, but that its admission was harmless. It certainly did not tend to prove anything against the appellant. To prove that his wife had been circumspect and prudent in her conduct, if it tended to establish anything concerning the homicide, it was that he had less motive, and therefore it tended to negative intention to kill. But the finding of the jury makes it absolutely certain that the evidence did not harm him, because the verdict finds that he did not intend to kill.

On cross-examination of George Patterson, a witness for the defendant, the court permitted the State to ask him the question: "I will ask you if you took the defendant there [to the state prison] at the time referred to in pursuance of a verdict and judgment rendered against the defendant in this court for murder?" And over a proper objection timely made by appellant, permitted him to answer, "Yes, sir." This is quite an ugly ruling of the trial court, but it was not assigned as one of the reasons for a new trial, and therefore its correctness is not presented to this court for review.

The State proved by the shorthand reporter that appellant on the former trial as a witness in his own behalf had made certain answers to certain questions as to how the homicide occurred. The appellant claiming the right to cross-examine the shorthand reporter, asked him if the defendant as such witness had not during such examination made certain other answers to certain other questions and on objection by the State such questions and answers on cross-examination were excluded. This ruling is urged as

error. The questions were not strictly cross-examination any more than it would have been under such claim to cross-examine to have gone on and called out all of appellant's testimony on that trial entirely. But the question did not seek to call out such portion of appellant's former testimony as was explanatory of that part that the State had put in evidence. And at most that was the utmost extent to which appellant could rightfully go in that direction. Therefore there was no error in sustaining the objection.

It is next contended that the evidence is not sufficient to sustain the verdict, but we think it was amply sufficient. It is true there was some conflict in it. If even the preponderance of the evidence was against the verdict if that part of the evidence tending to support the verdict is legally sufficient to establish all the essential facts to constitute the crime the defendant was found guilty of, we cannot reverse because that would be reversing for an error of fact and not of law. We can only reverse for errors of law. *Deal* v. *State, supra,* and authorities there cited. But we are inclined to think a fair preponderance of the evidence supports the verdict. At all events there was amply sufficient evidence to warrant the jury in finding that the appellant drew a revolver, a deadly and dangerous weapon, upon his wife in violation of the statute, though not intending to kill her. That while engaged in that unlawful act the revolver was accidentally discharged, shooting her, from which she immediately died.

The next error urged is the giving of instruction numbered 26. Counsel for appellant in their able brief have cited us to the page and lines of the record where it is found. While the instruction philologically and legally speaking in the strict sense is quite meaningless, and we think it ought never to have gone

to the jury on account of its liability to mislead them; yet the appellant is not in a situation to avail himself of the error, if error there was in giving it.   In his motion for a new trial he complains that the court erred in giving to the jury thirty-one different instructions on its own motion, specifying them by their numbers and relies on the giving of each of them as an error for which a new trial is asked.   But there is no one of them that is numbered 26.   The bill of exceptions shows that the court did give to the jury on its own motion the instruction complained of in the brief and it is numbered 26.   But the giving of that instruction is not specified in the motion for a new trial as a ground or reason therefor.   Another paragraph of the motion for a new trial specifies the giving of a large number of instructions given by the court at the request of the State, specifying them by number and instruction 26 is among them, but it is not the instruction complained of in the brief of counsel.   Having failed to assign the giving of instruction 26 on the court's own motion as a cause or reason for a new trial, the error in giving it if any there was is not presented by the record before us.

The next point made in appellant's brief for a reversal is the giving instruction numbered 23.   We find the instruction in the record at the place pointed out in the brief and it is among a series of instructions purporting to have been asked by the State.   As to those instructions the bill of exceptions reads thus: "That on the trial of said cause the State asked the court to give the following instructions:"   Then follows the series of instructions last mentioned.   Immediately at the end of the instructions follows this language, to wit:   "To the giving of all and each of which the court gave to the jury, to the giving of which instructions and each of them the defendant

excepted." This was nothing more than an exception
to the giving of each of the instructions and to be
available as an exception, it must appear affirmatively
that the ruling excepted to was actually made by the
court.   Elliott's App. Proc., section 593, and authori-
ties there cited.   Whether this series of instructions
was actually given by the court is not stated in the
bill of exceptions.   It is stated that the State re-
quested the court to give them, but whether the court
actually gave them is not stated.   If we construe the
first part of the sentence as a feeble attempt to ex-
press the idea of actually giving instructions we would
still be left in doubt as to what ones of the series
were given.   "To the giving of all and each of which
the court gave to the jury" would seem to indicate a
purpose to except to each of the instructions that the
court had given without indicating what particular
ones in the series had actually been given.   Here the
most that can be said in favor of the statement is that
it may be inferred or presumed that the court had given
the instructions or it would not have allowed an ex-
ception to the giving of them or any of them.   Judge
Elliott, in his work last cited, says: "If the appellate
tribunal is compelled to resort to presumptions it will
choose that which will sustain the proceedings of the
trial court and reject that which would overthrow
them.   If the condition of the record is such as to re-
quire the higher court to act upon a presumption it
will, without hesitation, adopt the presumption that
upholds the judgment upon which the appeal is pros-
ecuted.   It has been held, upon this general principle,
that it is not enough to show that 'error may have been
committed,' but it must be shown that error was actu-
ally committed." Elliott's App. Proc., section 709, and
authorities there cited.   The record, therefore, is not
in a condition to present to us the question of the cor-

rectness of said instruction.. Instruction 24 complained of belongs to the same series and is in the same fix.

It is next complained that the court erred in refusing instruction 31 asked by the defendant in a series asked by him. There was no error in this refusal, because the court had already substantially so instructed in the series given on its own motion. Instructions 34 and 37 belonging to the same series are in the same fix, having been substantially given in the series given by the court on its own motion. There was, therefore, no error in their refusal.

The next point made in appellant's brief is that the court erred in modifying instructions 10, 11, 14, and 41, asked by the defendant. We have examined these instructions as originally asked and as modified. To set them out here would needlessly extend this opinion, for they are very lengthy. It is sufficient to say that the modification scarcely made any material change in them. The court did not err in the modification.

A person called as a juror, Henry H. Reed, stated on his *voir dire* that he had formed an opinion as to the guilt or innocence of the accused and that notwithstanding that opinion he thought he could give the defendant a fair and impartial trial. That he had formed his opinion from reading newspaper accounts of the former trial. Being asked whether he had read that which purported to be the evidence given in the cause on such former trial he answered, "Yes, a part of it, at least." He then stated that he then had no opinion as to the guilt or innocence of the defendant. The court overruled the challenge. One Joseph Awkerman, called to serve on said jury, answered on his *voir dire* about the same as the other one, except that he was not positive that his opinion was formed

Siberry v. The State.

from reading the evidence of the former trial. The appellant challenged both jurors for cause which the court overruled. It does not appear that the opinion of either of them was formed from reading "the reports of the testimony of witnesses to the transaction." That one has formed or expressed an opinion as to the guilt or innocence of the defendant is ground for challenge by the statute; and it provides that "if it appear to have been founded upon reading newspaper statements, communications, comments, or reports or upon rumors or hearsay, and not upon conversations with witnesses to the transaction, or reading reports of their testimony, or hearing them testify; and [if] the juror state on oath that he feels able notwithstanding such opinion to render an impartial verdict upon the law and evidence, the court    *    *    *    may in its discretion admit him as competent to serve in such case." Opinions formed upon conversations with witnesses to the transaction constituting the crime and reading reports of their testimony disqualify, notwithstanding the juror may state that he feels able to render an impartial verdict. The newspaper reports of the evidence the reading of which that are to have the disqualifying effect is newspaper reports of the evidence of the transaction constituting the crime.

The evidence fails to show that the opinion of either of the challenged jurors had been formed on reading newspaper reports of the evidence of the transaction. There was therefore no error in overruling the challenge.

Having carefully gone through all the alleged errors pointed out in appellant's brief, we find no error for which the judgment ought to be reversed.

The judgment is affirmed.

ON PETITION FOR REHEARING.

A very earnest petition for a rehearing is presented in this case. And it is supported by a very able brief on behalf of the appellee. The Attorney-General has interposed a brief in opposition thereto of marked and signal ability in which he has ably defended each one of the rulings made in the original opinion urged as erroneous by the appellant's learned counsel.

The first count of the indictment charged murder in the first degree and hence if there was excitement in the county against the defendant he could have compelled the granting a change of venue to another county. Section 1840, Burns' R. S. 1894 (1771, R. S. 1881). And yet notwithstanding the fact that the defendant on the first trial was by a Wells county jury found guilty and given fifteen years in the penitentiary, his learned counsel so justly complimented by the Attorney-General for their ability in the defense of the accused never asked for a change from the county either upon the first or second trial.

But let us see if the evidence does not prove the commission of the crime charged, namely, involuntary manslaughter. It is claimed it does not. If the facts show an unintentional killing while in the commission of an unlawful act, it constitutes involuntary manslaughter. *Brown* v. *State,* 110 Ind. 486; section 1981, Burns' R. S. 1894 (1908, R. S. 1881).

The second count of the indictment did not charge the appellant with an intentional killing of his wife. Nor did it charge him as his counsel seem to think, with killing his wife while "threatening to use a pistol already drawn upon another person." But it charged him with an unintentional killing of her while engaged in the commission of an unlawful act, to wit: while drawing a deadly weapon upon her, to wit: a revolver, and that the same was by him unintention-

ally discharged while so engaged whereby she was shot and killed. Therefore all the talk to the effect that the appellant ought not to be convicted because he did not intend to kill is idle and has no pertinency to the case. It is clear that it is because he did not intend to kill her; that, helped to make the offense involuntary manslaughter. If he had intended to kill her, that fact would have made it murder and not involuntary manslaughter.

The jury in finding him guilty of involuntary manslaughter as charged in the second count have found that he did not intend to kill his wife.

There is no controversy that the evidence establishes that the appellant killed his wife, because that fact he states under oath on the witness stand himself. And there is no controversy that the evidence justified the jury in finding that he did not intend to kill her. That much is beyond dispute. The only lacking element to complete the crime is, was he at the time engaged in the commission of some unlawful act when the revolver was unintentionally discharged, shooting her? Another section of the criminal code provides that: "Whoever draws, or threatens to use any pistol, dirk, knife, slung shot, or any other deadly or dangerous weapon, already drawn upon another person, shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be fined in any sum not less than one nor more than five hundred dollars, to which may be added imprisonment in the county jail not exceeding six months." Section 2068, Burns' R. S. 1894 (1984, R. S. 1881).

It has been held under this section that if one draw a revolver at another and it is unintentionally discharged and kills the person on whom it is drawn, that it constitutes involuntary manslaughter, because the drawing of the revolver at the person killed was

an unlawful act, being in violation of the statute last quoted. *Surber* v. *State*, 99 Ind. 71. Counsel is right in saying that this statute means something more than merely having the pistol in one's hand when it goes off, and that to draw a pistol has a meaning beyond having it in one's hands. The language of the statute is, "Whoever draws, etc., * * * any pistol, etc., upon any other person, etc., shall be deemed guilty, etc. * * *"

To draw a weapon upon another means within the purview of that statute so to draw it that it may be used to his injury, as to point the muzzle of a gun or revolver at another; but it is not necessary that he intend to discharge or fire it off or shoot the person in order to constitute the violation of the statute quoted.

The only element of illegality necessary to constitute a violation of the statute and to make the act an unlawful one within the meaning of that part of the section defining involuntary manslaughter is, that the defendant intentionally pointed the muzzle of the revolver at his wife. It was to prevent such foolhardy acts, thereby endangering human life and limb by making them crimes and punishing the same that the statute against drawing deadly weapons upon others was enacted.

The only remaining question to be determined to enable us to decide whether counsel is right in holding that the "evidence does not warrant the finding and judgment" is to ascertain from the evidence whether the accused did intentionally point the muzzle of the revolver at his wife. That the revolver was discharged while in his hands, by his act, and that its load thus discharged struck his wife, causing her death in five minutes thereafter is conceded on all hands.

The appellant and his wife and Jonathan Campbell

and his wife, Ella Campbell, were all in the room to-gether.  Appellant had a new revolver lying on the bureau in the corner of the room which he was trying to trade to Campbell for a dozen chickens.  Campbell also had an old broken revolver lying on the same bureau.  Campbell took up the new revolver and sat on the bed in another corner of the room to examine it.

Up to this point the testimony of the appellant and Campbell and his wife, the only living eye-witnesses, substantially agree.  Then both Campbell and his wife testify that appellant in a playful way com-menced snapping the old broken revolver at his wife, which he did three or four times, while Campbell was examining the new.  That his wife remarked, "you can't make me flinch," and he said, "I can with the other one," and she replied, "no you can't, or you are afraid to," or something of that kind.  That appellant immediately walked across the room to Campbell, took the new revolver out of Campbell's hands, started across the room toward his wife, pointing the revolver toward her, making it give out a clicking sound.  That the Campbells heard it "click" three or four times, and that it went off and was discharged, the discharge entering his wife's body, causing her death as before stated.  The appellant was a witness on his own be-half and in his testimony substantially agrees with all the testimony of Mr. and Mrs. Campbell, except as to pointing the revolver at his wife.  That, he denies and says he was going to the bureau with it to put it away and was revolving the cylinder so as to rest the hammer on the one empty chamber and that as he was so doing he did not know that his wife was in range with the muzzle of the weapon when the ham-mer slipped from under his thumb and caused the ex-plosion.  He positively denies that he snapped the old revolver at his wife or that there was anything said

between him and her about snapping either revolver at her, though he admits he snapped the old revolver, but says it was pointed at the floor and not at his wife. It further appears from the evidence that the Campbells were friendly to the appellant. The homicide occurred about 9 o'clock in the morning. Appellant remained about the house all the remainder of the day, and during the day told a number of persons who called there how the killing occurred. Among them were the sheriff of the county, Mr. Daily, the prosecutor, Mr. Branyan, George Kirkwood, and others, and they all testified that he gave substantially and in effect the same account of how it happened as that given by Mrs. Ella and Mr. Jonathan Campbell. The house at which it occurred was the residence of the Campbells, and appellant and wife were temporarily boarding there. There was some evidence tending to prove an intentional killing, but that went to the support of the count for murder.

But the verdict is that there was no intentional killing. Now how the jury under this evidence could have found him less than guilty of involuntary manslaughter is something we are wholly unable to understand. They have solved every question where there was room for doubt in favor of the accused.

Thus we see that the counsel is seriously, though doubtless honestly and conscientiously mistaken, both as to the law and the facts in this case.

The courts are charged with the high duty of upholding the majesty of the law that human life, liberty and property may be made secure. That object is as effectually accomplished by adjudging that the innocent shall go acquit as that the guilty shall be punished. But when the courts shall adjudge that the guilty shall escape the penalty, the law has annexed to their crimes through an appeal to human

sympathy, the strong arm of the law that encircles us all by day and by night and shields us from the lawless is paralyzed and made useless.

We now turn to the other grounds urged for a rehearing by the appellant's learned counsel.

The point made that we are too technical in holding that instructions 23 and 24, asked by the State, are not shown by the bill of exceptions to have been actually given. We have reexamined that question and still think we were right.

But waiving that objection and treating those two instructions as having been given to the jury, we are of opinion that the giving of said instructions if even they were so given to the jury did not constitute prejudicial error against the appellant. Said instructions were both devoted wholly to an effort to define what a reasonable doubt is. As we have seen, the only question of fact about which there was any room for doubt of any kind was solved by the jury in favor of the defendant. There was not even a dispute in the evidence that by the defendant's act a loaded revolver was fired into his wife's body, causing her death in five minutes. While the defendant's testimony alone in a lame and halting and inconsistent manner disputes that he intentionally drew or pointed the revolver at his wife, yet the testimony of a large number of impartial witnesses overwhelmingly establish that he admitted that he did so draw the weapon upon and point the same at his wife, taken with the evidence of the two Campbells, leaves no room for any kind of a doubt, that he in truth did so.

Therefore if the instructions in question did not accurately define a reasonable doubt it could not have harmed the appellant. It may be conceded that those instructions did not quite accurately define a reasonable doubt. But this court has held that: "Indeed,

we might add, that in order to justify the reversal of a case for a merely inaccurate definition of what constitutes 'a reasonable doubt,' it must very plainly appear that the defendant was prejudiced in his substantial rights thereby." *Heyl* v. *State*, 109 Ind. 593; section 1964, Burns' R. S. 1894 (1891, R. S. 1881). To the same effect is *Skaggs* v. *State*, 108 Ind. 53; *Epps* v. *State*, 102 Ind. 539; *Strong* v. *State*, 105 Ind. 1; *Galvin* v. *State*, 93 Ind. 550.

The next point urged is the error assigned that the trial court overruled the motion in arrest of judgment. It might be sufficient answer to this contention to say that no such question was urged on the original hearing and that it is too late to raise it for the first time on petition for a rehearing. The same objection was urged under the assignment of overruling appellant's motion to quash. This court having ascertained that no such motion or ruling is contained in the record the appellant's learned counsel confessing the fact now for the first time, urge that the motion in arrest of judgment ought to have been sustained, not because the indictment does not state facts sufficient to constitute a public offense, nor because the grand jury had no legal authority to inquire into the offense charged by reason of its not being within the jurisdiction of the court, but because a count for murder is joined with a count for involuntary manslaughter. We held in the original opinion that the statute expressly authorized such joinder. Section 1818, Burns' R. S. 1894 (1749, R. S. 1881). Yet the appellant's learned counsel and the Attorney-General continue to object to the validity of such joinder without suggesting any reason why we should disregard the statute. But if we even had the power to nullify the statute and hold such joinder unauthorized we could not do so on a motion in arrest, as the statute only authorizes

such a motion to be made on the two grounds above mentioned, namely, want of jurisdiction and want of sufficient facts.   Therefore, there could be no error in overruling the motion in arrest no matter what the law was as to the right of joinder of the two counts in one indictment.

The next point made is that we were in error in holding that the evidence failed to show that the jurors Reed and Awkerman formed their opinions from reading the evidence of the transaction.   We have reexamined the evidence again and are confirmed in the opinion that we were right.   But waiving that point, and conceding that they did so form their opinions, and that they were thereby disqualified, and that the trial court erred in overruling the appellant's challenge of them for cause, yet the record discloses that the ruling did not prejudice the substantial rights of the defendant, because he afterwards, as the record discloses, peremptorily challenged them and put them off of the jury, and when he accepted the jury, he had a good number of peremptory challenges which he had not exhausted.   The criminal code requires this court to "not regard technical errors or exceptions  *  *  to any decision or action in the court below which did not, in the opinion of the Supreme Court, prejudice the substantial rights of the defendant."

As long as he had accepted the jury voluntarily without having exhausted his peremptory challenges the error, if error it was, of forcing him to use two of his peremptory challenges to get rid of the two alleged incompetent jurors did not harm him, and hence must be disregarded by the express terms of the statute. Such is the rule recognized by this court in *Woods* v. *State*, 134 Ind. 35-38.   *Brown* v. *State*, 70 Ind. 588, establishing a different rule upon this point, was hardly justified by the statute as it then stood, but is in direct

conflict with the statute above quoted, enacted since, and is overruled in so far as it is in conflict with that statute and this decision, and *Fletcher* v. *Crist*, 139 Ind. 121, in so far as it recognizes and follows *Brown* v. *State*, *supra*, is modified to conform to this opinion.

And lastly, appellant's counsel conceding the correctness of our holding that instruction 26, given by the court on its own motion, was not specified in the motion for a new trial, and therefore not presented for consideration, have lamented their client's ill luck through counsel's mistake in changing the number of the instruction in embodying it in the bill of exceptions, and say: "Indeed human life and liberty hang on a slender thread." Thus we have their intimation that if that mistake had not been made the appellant would have secured a reversal on account of error in giving that instruction. But we, in deference to counsel's earnestness, have carefully reexamined that instruction and find that it was utterly harmless as against the appellant. The part of the instruction to which exception is taken is if: "After her death the defendant voluntarily and without any inducement, made statements that he committed the homicide and how he committed it, and if you find, beyond a reasonable doubt, that he made any such statements, then such statements may be considered by you as strong proof against the defendant, in determining the fact as to whether he did commit the homicide or not, if you find there was a homicide committed."

The only words in the whole instruction objected to are: "then such statements may be considered by you as strong proof," etc. Those words are objectionable as invading the province of the jury to determine the weight of the evidence. But what is it that the charge authorizes them to consider such admissions strong proof of? Clearly, it was: "as to whether he did com-

mit the homicide or not." Anderson's Law Dictionary defines the word homicide as "A generic term, embracing every mode by which the life of one man is taken by the act of another." Homicide does not necessarily import crime. Appellant, in his own testimony, stated that by his act the life of his wife was taken. Therefore he himself testified before the jury that he committed the homicide. Therefore it could not harm him to tell the jury anything was strong evidence of a fact he admitted on the witness stand and did not dispute.

There were other instructions properly telling the jury what facts and circumstances would be required to make the appellant's acts criminal homicide, and what facts and circumstances would make it excusable homicide. Though the instruction in question was awkwardly framed in view of the evidence and the other instructions, it is very clear that it could not harm the appellant if it was even erroneous.

Another ground urged is that the punishment is cruel and excessive. There are nine grounds specified in the criminal code for each of which a new trial is authorized to be granted to the defendant. Section 1911, Burns' R. S. 1894 (1842, R. S. 1881). That the punishment is cruel and excessive is not embraced in any of them.

The penalty fixed by the statute for the crime the jury found the defendant guilty of is imprisonment in the state prison not more than twenty-one years, nor less than two years. Section 1981, Burns' R. S. 1894 (1908, R. S. 1881). Within those limits the jury are confined by the law in fixing his punishment if they find him guilty. Their discretion to fix the punishment anywhere within those limits cannot be controlled by the court. *Murphy* v. *State*, 97 **Ind.** 579;

Vol. 149—45

*McCulley* v. *State*, 62 Ind. 428; *McLaughlin* v. *State*, 45 Ind. 338. It is held in *Ledgerwood* v. *State*, 134 Ind., at page 91, that if the punishment fixed is within the limits prescribed by the statute, as was the case here, this court cannot say that the punishment is cruel or excessive.

Thus we have, in deference to the pathetic appeal of appellant's learned counsel, patiently gone over every objection to the affirmance of the judgment below, and find our conviction greatly strengthened that there is not a shadow of legal ground for the reversal of that judgment.

Therefore, the petition for a rehearing is overruled.