Argued March 31, decided June 8, rehearing denied July 20, modified
August 24, 1909.

## STATE v. WHITNEY.

[102 Pac. 288.]

HOMICIDE—INDICTMENT—SUFFICIENCY—VOLUNTARY HOMICIDE.

1. An indictment, alleging that accused feloniously and voluntarily administered a suppository containing poison to another, from the effects of which she died, was insufficient, under Section 1745, B. & C. Comp., making it manslaughter to voluntarily kill another upon a sudden heat of passion, but without malice and deliberation, in that it did not allege facts constituting voluntary manslaughter.

HOMICIDE—INDICTMENT—SUFFICIENCY — INVOLUNTARY MANSLAUGHTER.

2. An indictment, alleging that accused feloniously and voluntarily administered poison to another, from the effects of which she died, did not charge involuntary manslaughter, under Section 1746, B. & C. Comp., making it involuntary manslaughter to involuntarily kill another, while engaged in the commission of an unlawful act, or a lawful act without due caution, in that it did not allege facts showing any unlawful act, or a lawful act negligently committed.

HOMICIDE—INDICTMENT—MALICE—INVOLUNTARY MANSLAUGHTER.

3. In a prosecution, under Section 1746, B. & C. Comp., making it involuntary manslaughter to involuntarily kill another while engaged in the commission of an unlawful act, or a lawful act negligently committed, the indictment need not allege malice.

HOMICIDE—INDICTMENT—INTENT—INVOLUNTARY MANSLAUGHTER.

4. In a prosecution under Section 1746, B. & C. Comp., making it involuntary manslaughter to involuntarily kill another while engaged in the commission of an unlawful act, or a lawful act negligently committed, an indictment need not allege an intent to kill; the criminal element being the commission of an unlawful act, or a lawful act negligently committed, without intention to take life or to do great bodily harm.

From Multnomah: JOHN B. CLELAND, Judge.

Statment by MR. JUSTICE EAKIN.

The defendant was indicted by the grand jury of Multnomah County for the crime of manslaughter in the following language:

"G. B. Whitney is accused by the grand jury of the county of Multnomah, and State of Oregon, by this indictment, of the crime of manslaughter, committed as follows: The said G. B. Whitney on the 20th day of March, A. D. 1908, in the county of Multnomah, and State of Oregon, did feloniously and voluntarily kill one Mabel Wirtz, by voluntarily giving and administering unto her, the said Mabel Wirtz, on the 14th day of March, 1908, in the said county and state, one suppository con-

taining bichloride of mercury, a deadly poison, from the effects of which deadly poison, so given and administered, she, the said Mabel Wirtz, became mortally sick, and being so mortally sick, did languish from such sickness until the said 30th day of March, 1908, when the said Mabel Wirtz, in said county and state, died from the effects of such deadly poison, so voluntarily given and administered unto her," etc.

The defendant demurred to this indictment, for the reason that it does not state facts constituting an offense in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended, and that the facts stated do not constitute a crime, which was overruled by the court. Upon the trial a verdict was returned against defendant, finding him "guilty of manslaughter as charged in the indictment." From a judgment thereon defendant appeals.          ·          REVERSED.

For appellant there was a brief with oral arguments by *Mr. William P. Richardson* and *Mr. John A. Jeffrey.*

For the State there was a brief over the names of *Mr. Andrew M. Crawford,* Attorney General, *Mr. George J. Cameron,* District Attorney, and *Mr. John J. Fitzgerald,* Deputy District Attorney, with oral arguments by *Mr. Cameron* and *Mr. Fitzgerald.*

MR. JUSTICE EAKIN delivered the opinion of the court.

1. Defendant was a practicing dentist at Forest Grove, Washington County, Oregon. The decedent was employed in a millinery store, and resided with her mother in Portland, who had recently moved from Forest Grove to that city for the benefit of her children, who had employment there; the father remaining at Forest Grove, where he conducted a business. At the trial it appeared that defendant had been keeping company with the decedent about three months, and he testified that they were engaged to be married. There was evidence tending to show that, a few days prior to the illness of decedent, the

defendant had procured from a drug store at Forest Grove, and delivered to decedent, a suppository of bichloride of mercury, to be used by decedent to avoid pregnancy, which was administered through the vagina, resulting in mercurial poisoning, from the effects of which decedent died within about two weeks from the time she first complained of illness. The statute (Section 1746, B. & C. Comp.) under which this indictment was attempted to be drawn provides:

"If any person shall, in the commission of an unlawful act, or a lawful act without due caution or circumspection, involuntarily kill another, such person shall be deemed guilty of manslaughter."

4. This, in substance, is the common-law definition of involuntary manslaughter. Blackstone, Com. 191; Section 1745, B. & C. Comp., is also common-law voluntary manslaughter, viz:

"If any person shall, without malice, express or implied, and without deliberation, upon a sudden heat of passion, caused by a provocation apparently sufficient to make the passion irresistible, voluntarily kill another, such person shall be deemed guilty of manslaughter."

By Section 1303, B. & C. Comp., the indictment must contain a statement of the acts constituting the offense in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended. Under Section 1308, B. & C. Comp., the indictment must charge but one crime, and in one form only.

2. The indictment in this case does not charge voluntary manslaughter under Section 1745, B. & C. Comp., although it charges that he "did feloniously and voluntarily kill Mabel Wirtz," because it sets forth none of the acts constituting an offense under that section. Probably the words "feloniously and voluntarily" as used in the indictment, might be treated as surplusage, and the indictment be held good under Section 1746, B. & C.

Comp., if the acts charged constitute an offense. Wharton, Homicide, 335; *State* v. *Emerich,* 87 Mo. 116; *Chapman* v. *State,* 129 Ga. 855 (48 S. E. 350); *Sidberry* v. *State,* 149 Ind. 684 (39 N. E. 936).

3. It becomes important to determine whether it does state acts constituting involuntary manslaughter. The allegation in the indictment is "by voluntarily giving and administering unto her, the said Mabel Wirtz, on the 14th day of March, 1908, in said county and state, one suppository containing bichloride of mercury, a deadly poison, from the effects of which deadly poson, so given and administered, she, the said Mabel Wirtz, became mortally sick, * * and died." This allegation does not state facts disclosing an unlawful act, or a lawful act done without due caution and circumspection, or any act of criminality. It is not necessary to allege malice or intent to kill. The criminal element consists in doing the unlawful act, without any intention to take the life of decedent, or do her great bodily harm. It is therefore necessary that the indictment disclose that the act causing death was an unlawful act. Wharton, Homicide, at page 879, says:

"We have seen that causing death by unlawful acts not amounting to felony, or by lawful acts unlawfully done, constitutes involuntary manslaughter. To make an indictment for involuntary manslaughter good, it must be alleged that the accused was in the commission of some unlawful act, or of a lawful act unlawfully done, and that death resulted therefrom. * * And an indictment for a killing, not alleging that the doer was engaged in the perpetration of, or attempt to perpetrate, a crime or misdemeanor not amounting to a felony, is insufficient under a statute making it manslaughter in a specified degree to kill a human being without design to effect death by a person engaged in the perpetration of, or attempt to perpetrate, any crime or misdemeanor not amounting to a felony, in cases in which such killing would be murder at common law. And in charging the collateral crime or misde-

meanor, either the statutory language must be used, or the statutory ingredients must be substantially charged."

See, also, *State* v. *Emerich,* 87 Mo. 115; *People* v. *Huntington,* 138 Ca. 261 (70 Pac. 284). Wharton here refers to a statute in which the act that results in death differs from section 1746 of our statute, but this does not weaken his statement that the charge must disclose the commission of an unlawful act. And in *State* v. *Emerich,.* 87 Mo. 115, it is held that the charge of involuntary manslaughter must state that act was done in the perpetration of a misdemeanor. *Connor* v. *Commonwealth,* 76 Ky. 714

4. Counsel for the State in his brief cites authorities to the effect that poison negligently administered, or administered with an evil purpose, in the event death follows, is manslaughter. However, it is not alleged that the poison was administered without due caution or circumspection, nor is an evil purpose alleged, and therefore these authorities do not aid the State. Where the charge is murder by poisoning, as is the case is some authorities cited, the indictment charges an intent to murder, thus disclosing an unlawful act, or evil purpose, and will support a verdict of involuntary manslaughter under Section 1746, B. & C. Comp. This was expressly held in *State* v. *Ellsworth,* 30 Or. 145, (47 Pac. 199), but in the present case the indictment is confined to a charge of a violation of Section 1746, without alleging an unlawful act. Therefore, the indictment is insufficient to charge a crime under that section, and the demurrer should have been sustained, and it is unnecessary to consider the other questions involved.

The judgment of the lower court will be reversed, and the cause remanded, with directions to sustain the demurrer, and for such other proceedings as may be proper.

REVERSED.