## JONES v. THE STATE.

A person under a prosecution for a capital offence about to be submitted to a grand jury, may challenge any of the grand jurors for cause, but not peremptorily.

One of the grand jurors in such a case, in answer to a question put to him by the prosecuting attorney, said, "that he thought he could not in his conscience find any man guilty of an offence that would subject him to death." *Held,* that the juror was disqualified.

Challenges to petit jurors are first made by the prisoner, and afterwards by the prosecuting attorney.

The record in a capital case showed, that, after the petit jury were sworn, the *Court*

Nov. Term,
1831.

JONES
v.
THE STATE.

Tuesday,
November 15.

adjourned from one day to the next, but,it did not show that the jury were legally disposed of during the adjournment. *Held*, that a verdict and judgment against the defendant must, under those circumstances, be considered erroneous.

ERROR to the *Bartholomew* Circuit Court.

STEVENS, J.—*Jones*, the plaintiff in error, was indicted for the murder of *John Ray*, tried by a jury, found guilty, and a judgment of death rendered by the Court against him on the verdict of the jury. To reverse which judgment this writ of error is prosecuted.

It appears of record by a bill of exceptions, that, at the time of impanelling the grand jury that found the bill of indictment, *Jones* was in prison in the custody of the sheriff on the charge for which he was indicted and convicted; and by order of the Court was in Court at the time the grand jury was being sworn; and that he claimed the right of peremptorily challenging the jurors without showing any cause, which the Court overruled, but permitted him to challenge for cause; that he challenged one *Isaac Parker* for cause, and *Parker* was sworn to answer questions touching his qualifications, and after being examined by *Jones*, was by him accepted; upon which, the attorney prosecuting the pleas of the state asked the juror, "*if he could in his conscience find any man guilty of an offence which would subject him to the punishment of death?*" To the asking of which question *Jones* objected, but the Court overruled the objection and required the juror to answer; and the juror answering, that "*he thought he could not in his conscience find any man guilty of an offence that would subject him to death,*" he was by the Court for that cause set aside.

It also appears of record by the bill of exceptions, that after the bill of indictment was found, and the defendant had been arraigned and pleaded not guilty, and while the petit jury was being impanelled and sworn, the defendant moved the Court to require the attorney prosecuting the pleas of the state, to first examine the jurors and accept or reject them, before the defendant should be called on to make his election; which motion the Court overruled and required the defendant to first make his election, and after he had accepted, the attorney prosecuting the pleas of the state should then be at liberty to make his challenges, if any he had to make: and, under that decision of the Court, *James Jones* and other jurors were set

aside by the attorney prosecuting, after the defendant had chosen them.

It further appears of record, that the petit jury was impanelled and sworn on *Wednesday*, and that before any evidence was heard, the Court remanded the defendant into the custody of the sheriff, and adjourned until *Thursday* morning, eight o'clock; but the record is entirely silent as to what was done with the jury.

The first point in this case is,—Did the Circuit Court err in not permitting the defendant to challenge grand jurors peremptorily?

There is no statute or sanctioned practice in this state, authorising a prisoner to peremptorily challenge grand jurors; and it is believed that no such practice exists in *England*. The common law requires grand jurors to be good and lawful freeholders, and the *English* statutes require several additional qualifications; and *Chitty* in his treatise on criminal law, when speaking of those qualifications of grand jurors, says that a prisoner, who is at the time under a prosecution for an offence about to be submitted to the consideration of a grand jury, may challenge any of the grand jurors, who lacks any of those qualifications required by the common and statute laws. *Chitty* refers to *Hawkins'* Pleas of the Crown, where it is said that a challenge to grand jurors is very properly limited to persons who are, at the time, under a prosecution for an offence about to be submitted to a grand jury. By these authorities it is clear, that, in *England*, these challenges are limited to one certain class of cases, and then only for cause. We are therefore of opinion that the Circuit Court decided correctly.

The next point is,—Did the Court err in permitting the attorney prosecuting to ask the grand juror, "if he could in his conscience find any man guilty of an offence which would subject him to the punishment of death," and in setting aside the juror for answering that he "thought he could not?"

The plaintiff contends, that our statute does not authorise the asking of such a question, and that it cannot be asked without the aid of a statute. It is correct that, without the aid of a statute, no question can be asked a juror that tends either to his disgrace or his dishonour; but the authorities all show what is to be understood by that. Many of the cases under that

Nov. Term,
1831.

JONES
v.
THE STATE.

head are summed up in *Bacon's* Abridgement, title Juries, letter E., and in the case of *The King* v. *Edmonds*, 6 Sergeant & Lowber, 502, 503.    It cannot be asked a juror, if he has been either charged with, imprisoned for, or convicted of a crime, or if he is a villein or an outlaw, because these questions tend to his disgrace.    Nor can it be asked him, whether he has formed or expressed an opinion of the prisoner's guilt; because, if he has formed or expressed an opinion through ill-will, malice, or hatred to the prisoner, it is dishonourable, and if he has formed or expressed his opinion honestly, from his correct knowledge of all the facts of the case, it is no cause of challenge (1).    The question asked the juror, in this case, has nothing to do with the guilt or innocence of the prisoner, nor is it respecting any improper act or conduct of the juror, nor could it tend to either his disgrace or dishonour.    It was a general question upon an abstract principle, and therefore, under the circumstances of the case, might be properly asked.    The object, in these cases, is not to procure a jury that will acquit the guilty or convict the innocent, but to select such men as will impartially hear and examine, and acquit the innocent and convict the guilty. A grand jury is the great inquest between the government and the citizen; an institution that should be preserved in its purity; and no person should ever be permitted to take a seat as a member thereof, except such good and lawful men as will impartially and faithfully carry the true objects of the institution into effect.    We think the Court did not err.

The next point is,—Did the Court err in permitting the attorney prosecuting to challenge a petit juror after the prisoner had accepted him?

The only question on this point is, who shall first make his challenge?    If this were a new question and we had it to settle, we should say that the state ought first to make her challenges; but as all the *English* authorities establish a different doctrine, and no *American* cases have been seen by us to authorise a different practice, we are bound for the present to sanction what the Circuit Court has done.

The last point is,—Did the Circuit Court err in adjourning, after the petit jury was sworn, from *Wednesday* evening until *Thursday* morning, without putting the jury under the care and charge of the proper and sworn officers of the Court?

If it is a fact, that the Circuit Court did so adjourn without disposing of the jury, by putting them under the charge and care of the proper sworn officers of the Court, it is admitted without controversy to be error; but it is insisted, that we are bound to presume that the Court acts correctly in all cases of discretion, unless the contrary appears of record by a bill of exceptions. It is, as a general principle, correct to presume that a Court acts correctly in matters of discretion, unless the contrary appears of record, if the record shows that the Court did act upon the subject. Our statute requires, in cases of appeals and writs of error, that the Circuit Courts shall cause to be certified to us a full and complete transcript of all its proceedings; and this transcript is so certified; and we are bound to believe, that nothing more was done than what is certified to us to have been done. We cannot, by intendment, supply any material proceeding which is entirely omitted. There are no words in this record by which we can supply, by intendment, that the jury was legally and correctly disposed of by the Court during that adjournment. 2 *New-York* T. R. 373.—8 Johns. Rep. 437.—11 Johns. Rep. 442.—*King* v. *Stone*, 6 D. & E. 530. We think this a material and substantive error, and one which cannot be cured by intendment; and therefore the judgment and proceedings of the Circuit Court, subsequent to the plea of the prisoner, and the making up of the issue to the country, must be reversed and set aside, and the cause remanded, with instructions to award a *venire de novo*, and proceed to trial with the issue, &c.

*Per Curiam.*—The judgment is reversed, &c. Cause remanded, &c.

*Sweetser*, for the plaintiff.

*Brown*, *Herod*, and *Lane*, for the state.

(1) Vide *Hudson* v. *The State*, Vol. 1. of these Rep. 317. In a note to that case, a statute of 1828 is referred to, which authorises certain questions to be asked of the jurors, as to their having formed or expressed any opinion relative to the guilt or innocence of the prisoner. There is a similar statute of 1831. R. C. 1831, p. 197.