McCoy v. STATE OF INDIANA.

[No. 29,850. Filed November 15, 1960.]

*John A. Kesler*, of Terre Haute, for appellant.

*Edwin K. Steers,* Attorney General, and *Patrick D. Sullivan,* Deputy Attorney General, for appellee.

ARTERBURN, J.—The appellant was charged, tried and convicted of receiving stolen goods under Burns' §10-3017, 1956 Repl., which reads as follows:

> *"Receiving stolen goods.*—Whoever buys, receives, conceals or aids in the concealment of anything of value, which has been stolen, taken by robbers, embezzled, or obtained by false pretense, knowing the same to have been stolen, taken by robbers, embezzled, or obtained by false pretense, shall, if the goods be of the value of twenty-five dollars [$25.00] or more, on conviction, suffer the punishment prescribed for grand larceny, and if the goods be of the value of less than twenty-five dollars [$25.00] shall suffer the punishment prescribed for petit larceny."

The evidence showed that the defendant's eleven-year-old son, Max Allsup, and another boy nine years old, Hubert Shipley, Jr., broke into the F. W. Woolworth store and stole a radio, record player and other merchandise and took it to defendant's home one night. Evidence further shows that she knew the merchandise had been stolen by her son and the Shipley boy at the time. That same night they made two further trips to the store and returned with more merchandise. The Shipley boy stated that the defendant took certain "jewelry and stuff" up to her room at the time the merchandise was brought to her home. When a policeman came to her door that night she volunteered no information and she later concealed part of the merchandise and took some of it to the home of her parents.

Appellant first claims that by reason of the relationship of mother and son, she is immune from prosecution on the charge of receiving stolen goods from her son because of the following two statutes:

"Burns' Indiana Statutes Annotated, Section 9-103. *Accessory after the fact.*—Every person not standing in the relation of husband or wife, parent or child, to any person guilty of any felony, who shall, after the commission of such crime, harbor, conceal or assist such offender, with intent that he shall escape from detection, capture, arrest or punishment, shall be deemed an accessory after the fact, and may be charged, indicted, tried, convicted and punished, though the principal be neither charged, indicted, tried nor convicted; and, on such conviction, he shall suffer the same punishment and penalties as are prescribed by law for the punishment of the principal. But in such charge the offense committed by the principal offender shall be stated, and it shall therein be charged that the accessory did so harbor, conceal or assist such offender, with intent that he should escape detection, arrest, capture or punishment. [Acts 1905, ch. 169, §226, p. 584; 1935, ch. 124, §1, p. 465.]"

and

"Burns' Indiana Statutes Annotated, Section 10-1004. *Concealing felons.*—Whoever, not being husband or wife, parent or child of any person guilty of a felony, knowing him to be such, harbors or conceals such felon, shall, on conviction, be imprisoned in the state prison for any determinate period of not less than one [1] year nor more than ten [10] years. [Acts 1905, ch. 169, §482, p. 584; 1935, ch. 124, §2, p. 465.]"

The first statute is applicable only to cases where a defendant is charged as an accessory after the fact. The defendant here is not charged as an accessory after the fact, but as a principal in the offense of receiving stolen property under Burns' §10-3017, 1956 Repl. The statute (Burns' §9-103) is not applicable here. As to Burns' §10-1004, we point out likewise that the defendant is not here charged with concealing a felon and therefore that statute is not applicable.

Appellant further urges upon us that at common law a mother was protected in the family relationship to the extent that she should not be compelled to take a position antagonistic to the interests of her children. Quite an emotional plea is made to that effect. Regardless of how receptive such a plea may be to one's emotions, we must recognize that the law imposes upon the parents the duty of discipline rather than the aiding and abetting in the concealment of crimes of their children. In fact, the law holds parents liable for contributing to the delinquency of their children. Decency and self-respect require a rejection of a plea which would cultivate and promote delinquency and discourage good morals. The appellant cites the case of *Caldwell* v. *State* (1922), 193 Ind. 237, 137 N. E. 179 which involved a conviction of a wife for receiving stolen property from her husband. The conviction was reversed on the ground that the offense took place in the presence of the husband under whose domination she was at the time. Under such circumstances it is the duty of the State to prove that there was no coercion on the part of the wife at the time of the commission of the alleged crime. It has been said:

"At common law, a married woman is capable of, and responsible for, a crime committed by her, just as if unmarried, except as to acts done in the presence of her husband. If she commits a criminal act in his presence, it is presumed that she did it under constraint by him, and she is therefore excused and he is presumably punishable except in case of murder or treason. The presumption is a very slight one and may be rebutted by very slight circumstances. In view of a married woman's status at the present time, the presumption should not and generally does not exist." 14 Am. Jur., Criminal Law, §62, pp. 811, 812.

In this case there is no evidence and, of course, it cannot be presumed that the mother was under the domination of and coerced by her young son at the time she received the stolen property. The plea of the appellant upon this proposition is rejected.

The appellant contends that since the affidavit alleges that the property was "feloniously" stolen by two minors age eleven and nine, respectively, it charges the minors committed a felony of grand larceny, requiring imprisonment in the state prison. Burns' §9-101, 1956 Repl. We are not inclined to give this contention serious consideration for the reason first, that such word may be considered surplusage and secondly, the statute defining the receiving of stolen property merely stated property "which has been stolen, taken by robbers, embezzled or obtained by false pretense." The word "stolen" has quite a broad meaning and would apply to property unlawfully taken by minors subject to the juvenile laws. Burns' §9-3103 and Burns' §9-3204.

Burns' Section 9-1613 further provides that in any prosecution for the offense of receiving stolen property "it shall not be necessary on the trial thereof to prove that the person who stole such property had been convicted."

Appellant next complains of certain admissions by Max Allsup, the son, on the ground that the confessions of a thief are not admissible against the one receiving stolen property. With the general principle we are in agreement. However, the evidence shows here that the statements were made by the son in the presence of the appellant, his mother, to a police officer, the witness, when he came to the appellant's home and asked to come in and talk to the son. These statements made in the presence of the appel-

lant are admissible. *Dye* v. *State* (1891), 130 Ind. 87, 29 N. E. 771; 8 I. L. E., Criminal Law, Sec. 195, p. 292.

Likewise, the evidence as to the transfer of part of the stolen property from Max Allsup to the police officers, even though not in the presence of the appellant, are acts and facts which are admissible, although any statements or admissions at the time would not be.

Where, in a confession, a witness gives information as to where property may be found, although the confession may not be, for certain reasons admissible, the finding of the objects of property by a police officer or witness certainly are facts which are admissible, if material or relevant to the issues involved. *Watts* v. *State* (1950), 229 Ind. 80, 95 N. E. 2d 571; *Jackson, etc.* v. *State* (1958), 238 Ind. 365, 151 N. E. 2d 141; *Vorhis* v. *State* (1953), 233 Ind. 105, 116 N. E. 2d 233.

Under assignments 52 to 60, both inclusive, under the supplemental motion for a new trial, the appellant complains of certain testimony of police officers, among them, that a BB gun "was returned to Sayre and Company" and that certain businesses had been "burglarized." Upon examination we find that the objections made thereto were not sufficiently specific or were not those urged during trial; therefore, there was no prejudicial error committed. *Richeson, alias etc.* v. *State* (1953), 233 Ind. 1, 116 N. E. 2d 101; *Sekularac* v. *State* (1933), 205 Ind. 98, 185 N. E. 898; *Wimsatt* v. *State* (1957), 236 Ind. 286, 139 N. E. 2d 903.

Appellant next complains that Hubert Shipley, Jr. was permitted to testify without the appellant being permitted to inquire as to whether or not he consented thereto as an accomplice.

Burns' §9-1603 provides:

". . . The following persons are competent witnesses;

. . . .

"Third. Accomplices, when they consent to testify."

At common law the receiving of stolen goods, knowing them to be stolen, was a distinct offense, the receiver not being an accessory to the theft. *Ross* v. *State* (1825), 1 Blackf. 390.

This rule still prevails as stated in *Wertheimer* v. *State* (1929), 201 Ind. 572, at p. 577, 169 N. E. 40:

"In this state, receiving or concealing stolen goods, knowing them to have been stolen, is an independent, substantive offense and not merely an accessorial one. The particular thing denounced by the statute is the receiving of stolen goods knowingly. The name of the thief, or other person from whom the accused received the goods, is not necessary as identifying matter, and, for that reason, need not be alleged in the indictment."

It is therefore apparent that since the appellant was not charged as an accessory, the statute requiring consent of an accomplice to testify is not applicable in this case, since she was charged as a principal in the offense of receiving stolen property.

Appellant complains that certain exhibits (merchandise alleged to have been stolen) were obtained in violation of the constitutional right against search and seizure. The evidence shows that the police officers, standing on the porch of defendant's home at the time they were investigating the break-in at the Woolworth store, asked Max Allsup, the appellant's son, to get the merchandise out of his home and the appellant's home and give it to them. This he did.

It appears first that there was no actual search of the home and that one of the occupants voluntarily turned over the exhibits to the police. In the law of searches and seizures, the term "search" implies a prying into hidden places for that which is concealed. *McAdams* v. *State* (1948), 226 Ind. 403, 81 N. E. 2d 671.

Even if there had been a search, appellant cannot complain of a violation of a constitutional right of another person in connection with search and seizure. The constitutional right to be secure against unreasonable searches and seizures is a right *personal* to the individual claiming it. *Chicago's Last Dept. Store* v. *Indiana Alcoholic Beverage Commission* (1958), 161 F. Supp. 1, 5. (7th Cir.) ; *Frye* v. *State* (1926), 197 Ind. 615, 151 N. E. 728; *Miller* v. *State* (1929), 89 Ind. App. 510, 165 N. E. 554.

The appellant complains of the admission in evidence of exhibit 12, (a transistor radio) exhibit 9, (a gold flashlight) and exhibit 13, (a package of miscellaneous articles) alleged to have been stolen, on the ground that none of them were properly identified with the crime charged.

With reference to the last item, the evidence shows that the miscellaneous articles (exhibit 13) were all identified by Hubert Shipley, Jr., one of the boys, except one or two items which he said he did not remember seeing before. However, the evidence reveals that the entire exhibit 13 was shown to another witness, police officer Tryon, by the appellant at her home as merchandise taken by her son. This is a sufficient identification to connect this exhibit with the alleged crime. We further point out that appellant presents no authorities in the brief to support her position relative to State's exhibits 9, 12 and 13.

Appellant complains of the court partially reading defendant's tendered instruction 15 and then stated in the presence of the jury: "I guess that instruction was refused so I better not finish reading it." In the argument portion of appellant's brief there is no showing made as to the court's action at the time, nor is there any showing made that any request was made to the court to remedy any alleged prejudicial remarks by asking the jury to disregard the same. No authorities were cited on this point by the appellant and no prejudice is shown. For the reasons stated, this matter has not been properly presented, and we give it no further consideration.

Appellant next claims that the trial judge, in determining whether or not to adjourn for the day at the request of the prosecutor, made the remark: "He's (appellant's attorney) got a witness sitting right there beside him" (referring to the appellant). The appellant claims that this forced the appellant as a defendant to take the stand in violation of her constitutional rights, and forced her to be a witness against herself. Appellant made a motion for a mistrial at the time, based upon the statement by the court. The alleged misconduct of the court is not set forth in any bill of exceptions, although it is alleged to have taken place during the trial of the cause, and is supported only by affidavits filed with the motion for a new trial.

We have held that under Rule 1-15, affidavits may be used to support allegations of fact which occurred outside the trial itself and not in the presence of the court, such as newly discovered evidence or misconduct with reference to jurors outside the presence of the court and such related matters. However, matters which take place during the trial and in the presence of the court may be proved only by prop-

erly authenticated bills of exception. The appellant has failed to support her contention that any misconduct occurred in the respect mentioned. In *Nix* v. *State* (1960), 240 Ind. 392, 166 N. E. 2d 326 we said:

"Under Rule 1-15 of this Court affidavits may be used to supply facts not occurring on the voir dire examination or facts which occurred outside the knowledge of the court and which normally are not included in or cannot be shown by a bill of exceptions." See also: *Todd* v. *State* (1948), 226 Ind. 496, 81 N. E. 2d 530, 784, 82 N. E. 2d 407; *Hoy* v. *State* (1947), 225 Ind. 428, 75 N. E. 2d 921; *Anderson* v. *State* (1933), 205 Ind. 607, 186 N. E. 316.

The very silence of the official record in this matter, with no showing of any attempt to have the record amended to correct it, if any error occurred, is conclusive against appellant's contention that there was misconduct on the part of the court.

The appellant also complains, as set forth in affidavits filed with the motion for a new trial, that at various times her attorney made objections to certain testimony and to certain witnesses testifying, and that the court admonished him for making such objections, stating in substance that the "trial isn't a legal checker game" and that he, as attorney, was trying to confuse and befuddle the issues before the jury; that the appellant and her attorney were humiliated, embarrassed and belittled in the presence of the jury by such remarks and that as a result appellant refrained from making any further objections for fear of incurring the judge's wrath. Again we point out that these affidavits are not in harmony with the facts as set forth in the bill of exceptions. The bill of exceptions reveals the following colloquy between the judge and appellant's counsel:

"*Mr. Kesler:* I object for the reason that this witness is an accessory and is not competent to testify unless he consents.

"Court: Objection overruled. You have already made an objection to this witness being allowed to testify and I overruled the objection. Now you are making the same objection over and over to each question. If there were any other element your objection would be proper, but when there is no other element it seems to me it would be useless.

"Mr. Kesler: With all due respect I would like to object to your remark because I think it might cause the jury to believe I am doing something here I have no right to do. I am not trying to hide the truth from the jury or do anything but protect the constitutional rights of my client, which I firmly believe would allow me to object to any question asked any witness which I honestly believe makes it objectionable.

"Court: The question has already been ruled on.

"Mr. Kesler: I think I have a right to object to any question I would like to; I could do it by stipulation and show that I object to every question.

"Court: I don't think stipulations are good in a criminal case.

"Mr. Kesler: Then I have no choice but to object over again. But I will offer no more objections because I have been instructed by the court not to.

"Court: Don't misunderstand me, you have a right to object to anything you want to, but I am just telling you it seems useless to object to the same thing each and every time; however, it is your privilege, you know how to try a law suit, you have been prosecutor for years and tried lots of cases in this court."

We find nothing improper in the remarks of the court, as set forth in the bill of exceptions. We do not find that the appellant asks for any remedial action ▮ on the part of the court to which she thought she might be entitled, if such remarks were prejudicial. For the reasons stated previously, the bill

of exceptions settles what took place at the time of the exchange of remarks between the court and counsel.

Appellant complains that a witness, Clarence Gilbert, an eleven year old boy, was placed on the stand by the State, although he violated the order separating the witnesses. In the absence of any procurement or connivancy by the party using such a witness who has violated the order of the court, it is well established that it is within the discretion of the court to permit such a witness to testify. *Butler* v. *State,* (1951), 229 Ind. 241, 97 N. E. 2d 492; *Kelley* v. *State* (1948), 226 Ind. 148, 78 N. E. 2d 547; *Romary* v. *State* (1945), 223 Ind. 667, 64 N. E. 2d 22.

It has even been held to be prejudicial error to refuse to permit such a witness to testify where the party calling such witness is not at fault for such violation. *Taylor* v. *The State,* (1891), 130 Ind. 66, 29 N. E. 415; *The State, ex rel. Steigerwald* v. *Thomas* (1887), 111 Ind. 515, 13 N. E. 35.

The appellant next claims that a witness, Zenia Shipley, was threatened and intimidated by a police officer from appearing as a witness and could not be served with a subpoena. There is no showing that any attempt was made to subpoena her a reasonable time prior to the trial nor is there any showing that any application was made to the court for a continuance in order to procure her testimony, if it were material. Neither is there any showing as to when the appellant first learned of the alleged intimidation and why it was not called immediately to the attention of the trial court, if it occurred. The counter-affidavit by the prosecuting attorney denies the material allegations of the affidavit of Zenia Shipley, and we find no error in the court's overruling of this item in the motion for a new trial.

Appellant further charges that she was prejudiced because the State failed to produce her son, Max Allsup, as a witness and held him incommunicado. Counter-affidavits show that he was placed in Hoosier Boys' Town in Shelbyville, Indiana under the wardship of the Welfare Department; that this department preferred that the son not be present at the trial of his mother, the appellant herein, and the prosecuting attorney complied with such wishes for the welfare of the son. It is further shown that appellant's counsel requested that the son not be called as a witness. We find no error in the complaint made.

Finally, the appellant in her brief urges upon us that the court erred in giving State's Instructions Nos. 4 and 8 and in refusing to give appellant's Instructions Nos. 5, 11, 16, 20, 22, 49 and 51. Appellant's argument section of her brief does not present the questions pertaining to the instructions sufficiently specific so that this court can intelligently give consideration to the points urged. No reference is made to the page in the brief or the transcript where the full instructions may be found verbatim. Only portions of the instructions or a part of their wording are stated. Such part of the instruction stated is presented out of context. A court is unable to determine whether or not an instruction is proper or improper without reading the entire instruction.

The State's brief attempts to point out some of the other portions of the questioned instructions in order to meet some of the objections. We point out further that specific objections must be made to the questioned instructions in the trial court, so that the trial court's attention may be called thereto, and an opportunity given to make any correction prior to the giving of the instructions to the jury. On ap-

peal, any objections other than those specifically raised in the trial court will not be considered. In the argument portion of the brief the objections made to the giving of the instructions at the time are not set forth, and we have no way of determining whether or not the specific objections given in the trial court were the same as those now urged on appeal, without searching the record.

For the reasons stated, no alleged errors as to instructions are properly presented to us for consideration. *McCord* v. *Strader* (1949), 227 Ind. 389, 86 N. E. 2d 441; *McCague* v. *N. Y. C. & St. L. R. Co.* (1947), 225 Ind. 83, 71 N. E. 2d 569, 73 N. E. 2d 48; *Horton* v. *State* (1959), 239 Ind. 446, 158 N. E. 2d 288; *In re Darrow & Talbot* (1910), 175 Ind. 44, 92 N. E. 369; *Baltimore & O. R. Co.* v. *Pertics* (1943), 112 Ind. App. 674, 46 N. E. 2d 251.

The appellant finally contends that the verdict of the jury is not sustained by the evidence and is contrary to law. From a review of the evidence we find that it was sufficient to sustain the verdict and the verdict was not contrary to law.

The judgment is affirmed.

Bobbitt, Landis and Achor, JJ., concur.

Jackson, C. J. concurs in result.

NOTE.—Reported in 170 N. E. 2d 43.