GREENWALT *v.* STATE OF INDIANA.

[No. 30,261. Filed July 26, 1965.]

*Thomas A. Hoadley,* and *Henley & Dixon,* of Bloomington, for appellant.

*Edwin K. Steers,* Attorney General, and *Carl E. Van Dorn* and *Frederick J. Graf,* Deputy Attorneys General, for appellee.

MYERS, J.—Appellant was charged by affidavit with the crime of robbery with a deadly weapon. He was tried by a jury, was found guilty, and was sentenced to be imprisoned from ten to twenty-five years, pursuant to the provisions of §10-4709, Burns' Ind. Stat., 1956 Replacement.

The only error that appellant has assigned as grounds for reversal is the overruling of his motion for new trial. The Argument section of appellant's brief is divided into seven propositions, alphabetically lettered "A" to "G," which are asserted as grounds for granting appellant a new trial.

The first of these propositions states that the jury's verdict is not sustained by sufficient evidence and that the verdict is contrary to law. In determining if this is so, we consider only that evidence which is most favorable to the State, together with all reasonable and logical inferences that may be drawn therefrom. *Music* v. *State* (1959), 240 Ind. 54, 161 N. E. 2d 615.

The evidence most favorable to the State is as follows: On October 14, 1960, Russell Jennings, owner and operator of Jennings Filling Station and General Store on Road 1, east of Hamilton, Indiana, saw two men on motorcycles stop at the end of the driveway in front of his store. The cyclists were in their twenties, one riding a red motorcycle with white saddlebags while the other was on a dark motorcycle with black saddlebags. This occurred at about 8:00 o'clock in the evening. Jennings' son-in-law, Jack Richardson, was present in the store also and he, too, noticed the cyclists, who remained sitting for a while and then drove away. At approximately 8:50 p.m., after Richardson had left to pick up his wife, two men entered the store. They were wearing, what Jennings described as, "darky masks" or Halloween masks with

ladies' stockings pulled over them. When one of the men pulled a gun on him and demanded his money, Jennings became frightened, and he was ordered to go to the back of the store and lie down. The gun used was a twenty-two caliber one, with a five-inch barrel, white hand-grips and an overall length of eleven inches. At precisely 8:59 p.m., the two intruders left by the side door. Although Jennings did not see the money being taken out of the cash register, when he checked it after the robbery he found that about $136 had been taken. Of the $136 taken, $24 was in change, among which was a roll of quarters amounting to $10. Also, as the men were leaving, Jennings saw one of them carrying a cigar box which had contained some of the money and which was later found in a cornfield nearby.

On the night of the robbery, Kathryn Fee was working as a clerk in the Mixing Bowl Drug Store in Hamilton, Indiana, located about two miles from the Jennings Store. That evening she saw appellant on two occasions, once at 7:45 p.m. and again at 8:15 p.m. The first time, appellant asked Mrs. Fee for a full mask made of rubber. Thinking that she did not have any, she directed appellant and a male companion of his to the Booth General Store, which is one store away from the Drug Store. Appellant and his companion went to the Booth Store and he purchased from Mrs. Booth a rubber colored-man's mask. At 8:15 p.m., appellant was back at the Drug Store, and this time he purchased a man's mask with big lips. Then appellant returned to the Booth Store where he asked for and got a pair of ladies' stockings, the largest, the heaviest, and the darkest, size 10-1/2, with the trade name of "Cannon."

Shortly after 11:00 p.m. on the night of the robbery, appellant and one Christian V. Schneider entered

the Smith Tavern in Corunna, Indiana, where appellant purchased two six-packs of beer for which he paid in quarters. As the two were about to leave the Tavern, they stopped and asked Garland Treesh, a neighbor of Schneider's, if he cared to join them for a game of cards at the Schneider home, located in Corunna, Indiana. Treesh agreed, and, after asking another man, E. Leins, to join them, the men left. While playing cards, Treesh noticed that both appellant and Christian Schneider had a great deal of change. Appellant had around $10 worth of quarters.

The next day, October 15, 1960, about 8:00 a.m., Mrs. Schneider spoke to Treesh. She asked Treesh if he knew the whereabouts of her husband and appellant, and he told her they were locked up in jail, to which she replied that she knew there was something going on and that she was going to see if she could discover anything. She invited Treesh to help her look. As they proceeded into the Schneider home, Treesh noticed two motorcycles of the same description that had been seen in front of the Jennings Store. Treesh had seen appellant and Schneider ride these on numerous occasions. Mrs. Schneider examined the saddlebags on the motorcycles, and then they went into the house where Mrs. Greenwalt was also present. The three proceeded to the basement where under some rafters Treesh discovered a plastic sack containing the rubber masks and the stockings which appellant had purchased on the night of the robbery. Next to the plastic sack, there was a box containing a twenty-two caliber pistol of an overall length of eleven inches with white pearl handles. After examining the items, Treesh replaced them where he had found them. Also, while in the basement, Mrs. Schneider removed some overalls from a dryer and stated that appellant and Schneider had worn them the night before and that

they had been wet when they got off their motorcycles. Shortly after, Treesh notified the police who came and took the masks, stockings and pistol into their custody. Jennings identified the masks as the masks "like I seen that night."

In regard to the above evidence, appellant contends that it is insufficient to support the jury's verdict. In particular, appellant argues that he was never directly identified. Regarding identification, this court has repeatedly held that:

> "The question of identity is one of fact and not of law. Therefore, all evidence bearing upon the question must be submitted to the jury, and it is for the jury to determine whether it is satisfactory and trustworthy. . . ."
> *Medsker* v. *State* (1946), 224 Ind. 587, 590, 70 N. E. 2d 182, 183.

And in regard to this point, this court has further stated:

> "It is not essential, in order to sustain the conviction of appellant, that he should have been identified at the trial, by positive or direct evidence, as the guilty person. It was sufficient if his identification as such person was established by circumstantial evidence which satisfied the jury . . . beyond a reasonable doubt."
> *Craig* v. *State* (1908), 171 Ind. 317, 323, 86 N. E. 397, 400.

In addition to the above under proposition "A," appellant also contends that a conviction based on circumstantial evidence cannot stand on appeal. In response to this we state, and we have so held, that a conviction based on circumstantial evidence is valid if there is some substantial evidence of probative value from which a reasonable inference of guilt may be drawn. *McCoy et al.* v. *State* (1958), 237 Ind. 654, 660, 148 N. E. 2d 190. And, concerning

the presentation of "substantial evidence," this court recently confirmed the following rule of law in Indiana:

> ". . . It is only when there is an absence of substantial evidence on an essential element of an alleged crime, or when the evidence is without conflict and leads to but one reasonable conclusion and the verdict of the jury reached a contrary conclusion, that the verdict will be disturbed as not being supported by sufficient evidence or as being contrary to law." *Weaver* v. *State* (1963), 243 Ind. 560, 566, 187 N. E. 2d 485, 488.

Despite all of the evidence set out above, appellant still argues in proposition "A" that there was not sufficient evidence from which the jury could have connected appellant with the crime and found him guilty beyond a reasonable doubt. He further separately questions various findings of facts that do not individually constitute proof of the material allegations of the affidavit. These include questions in regard to the ownership of the revolver, why the masks were purchased, the presence of fingerprints on the rafters in the Schneiders' basement, and so on and so forth. In response to this, we state that it is well settled that this court need not be convinced beyond a reasonable doubt, and all that is required on appeal is that there be some evidence supporting every material allegation of the affidavit; and in determining whether a verdict or a finding is sustained by sufficient evidence, this court will not weigh conflicting evidence, but will consider only that tending to support the judgment. *Arrington* v. *State* (1952), 230 Ind. 384, 386, 103 N. E. 2d 210.

Consequently, from a careful consideration of the evidence set out above, we conclude that there cer-

tainly was substantial evidence by which the
jury could identify and connect appellant with
the crime and by which the jury's verdict is
thus sustained. As we stated very recently in *Ponos*
v. *State* (1962), 243 Ind. 411, 414, 184 N. E. 2d 10, 11:

> "This court will not examine the record to de-
> termine whether or not the evidence sustained
> defendant's construction of the evidence in favor
> of his innocence. It will only consider whether
> or not the evidence is sufficient for the jury or
> court to form a basis for its finding of guilty. . . ."

Under proposition "B" of his argument, appellant
makes various points which basically go to: (a) The
keeping of the jury together during the trial and not
permitting them to separate, and (b) the keeping of
the jury together during the period of deliberations.

Under the first point of this proposition, appellant
claims that it was reversible error to permit the jury,
during the trial, to separate under the directions and
instructions that the court gave to the jurors. To
support his contention, appellant cites as his chief
authority *Whitaker* v. *State* (1960), 240 Ind. 676, 168
N. E. 2d 212. We have carefully examined the report
of this case, and we have also noted with care and
interest the various opinions contained in that case,
and we do not agree with appellant that the majority
opinion in the *Whitaker* case, *supra,* states the pre-
vailing view in Indiana in regard to separation of
the jury during trial of non-capital cases. We feel
that the correct statement of the law is found in
the *Whitaker* case, *supra,* in the opinion by Judge
Arterburn entitled "Concurring in Part and Dissent-
ing in Part" (at pages 692, 693 of 240 Ind., at page
220 of 168 N. E. 2d):

> "We feel that a defendant in a case involving
> the death sentence has the mandatory right to
> require, upon request, that the jury be kept to-

gether during the trial and not be permitted to separate. *In all other cases* (our emphasis) the court has the discretion to determine whether or not a jury should be kept together during the trial or be permitted to separate under such directions and instructions as the court may give. The exercise of such discretion is reviewable by this Court for any alleged abuse. In such event, the defendant must show prejudicial error."

Furthermore, in the *Whitaker* case, *supra,* Judge Achor and Judge Landis expressly rejected the majority opinion's quotation from *Silverman* v. *State* (1927), 199 Ind. 225, 156 N. E. 549, which, in turn, used *Faulkner* v. *State* (1923), 193 Ind. 663, 141 N. E. 514, as its authority. Both of these cases were also cited by appellant as authorities. In his opinion, in which Judge Landis concurred, Judge Achor stated (at page 684 of 240 Ind., at page 216 of 168 N. E. 2d):

"I do not believe at the time they were written the cases of *Silverman* v. *State* (1927), 199 Ind. 225, 156 N. E. 549, and *Faulkner* v. *State* (1923), 193 Ind. 663, 141 N. E. 514, cited and quoted in the opinion correctly stated either the common law or the legislative intention relative to the separation of juries during the trial in non-capital cases."

Hence, a majority of three judges in the *Whitaker* case, *supra,* disagreed with appellant's contention in regard to the existing view of the law in Indiana on this matter. Consequently, in this non-capital case, it was within the discretion of the trial court to permit the jury, during the trial, to separate under the directions and instructions that it gave to the jurors, and, since the separation of the jury is within the court's discretion, no error is committed unless there is a showing of prejudicial error and abuse of discretion.

Appellant seems to have anticipated the view ex-

pressed above, and not only does he admit that the prevailing view in other jurisdictions gives the trial judge discretionary power to permit separation of the jury during trial over the defendant's objections, but he also claims that in the matter at hand there was abuse of discretion by the court when it allowed the jury to separate in view of the "voluminous publicity." However, we fail to find in the record any proof of the contents of newspaper articles or other news media. Furthermore, even if there were "voluminous publicity," as appellant claims, no attempt is made to show its communication to one or more of the jurors, or that, if communicated, one or more of the jurors permitted it to affect his or her subsequent conduct in regard to appellant's case. In regard to such matters, this court has held that separation of the jurors and communication with others is not a cause for a new trial unless such action probably influenced the verdict. *City of New Albany* v. *McCulloch* (1891), 127 Ind. 500, 26 N. E. 1074.

Concerning his argument that the State of Indiana should bear the burden of establishing that no undue influence was brought to bear upon separating the jury, appellant has failed to cite any authority binding on this court, and, therefore, we do not have to pass upon it. Supreme Court Rule 2-17 (f).

Appellant's second contention under proposition "B" is that there was misconduct of the jury during the period of deliberation. He attempts to establish such misconduct by an affidavit of his attorney. With respect to such circumstances, this court has held as follows:

"Among the grounds assigned for the motion for a new trial is misconduct of one of the jurors. Such misconduct is attempted to be established by appellant's affidavit, but the affidavit is not

brought into the record by a bill of exceptions. It is necessary to prove the alleged misconduct, and when attempted by an affidavit, it must be brought into the record by bill of exceptions. *Elbert* v. *Hoby*, 73 Ind. 111; *Beck* v. *State*, 72 Ind. 250; *McDaniel* v. *Mattingly*, 72 Ind. 349; Elliott's App. Proced., 817."

"Therefore, the record presents no question as to the alleged misconduct." *Rains* v. *State* (1894), 137 Ind. 83, 86, 87, 36 N. E. 532, 533.

From the above then, it appears that appellant must first prove, not merely allege, misconduct; and, second, when he wishes to do it by affidavit, he must bring the affidavit into the record by way of the bill of exceptions. In *McCoy* v. *State* (1960), 241 Ind. 104, 116, 117, 170 N. E. 2d 43, 49, appellant made affidavits in regard to misconduct on the part of the trial judge. They were not set forth in any bill of exceptions. This court said as follows:

"However, matters which take place during the trial and in the presence of the court may be proved only by properly authenticated bills of exception. The appellant has failed to support her contention that any misconduct occurred in the respect mentioned.

. . .

"The very silence of the official record in this matter, with no showing of any attempt to have the record amended to correct it, if any error occurred, is conclusive against appellant's contention that there was misconduct on the part of the court."

Appellant has failed to comply with either requirement, and, therefore, presents no question for this court to determine.

Under proposition "C," appellant questions the propriety of the discharge of the first jury and the subsequent trial and conviction of appellant. The record shows that a jury was impaneled and sworn on

October 31, 1961. On November 2, 1961, after some evidence had been presented by the State, the court was advised of the death of one of the juror's mother. Following an examination of the juror, who indicated that she could not give her individual attention to the trial of appellant's case, the court withdrew the case from the jury and dismissed them, to which appellant excepted. Then the cause was reset for trial on January 8, 1962. On January 2, 1962, appellant filed a plea of former jeopardy and a special plea of *autrefois acquit.* The State demurred to these pleas, and the court sustained the State's demurrer. Now appellant complains that it was error for the court to sustain the State's demurrer.

After careful consideration, we feel that appellant's contention under proposition "C" is without merit. This is so for two reasons: First, we have held that double jeopardy may be proved as a defense under a plea of not guilty, and, consequently, it is not error to sustain a demurrer to such a special answer. *Holt* v. *State* (1945), 223 Ind. 217, 59 N. E. 2d 563. Second, it is within the sound discretion of the court to determine if a legal necessity exists for the discharge of a jury. *Maddox* v. *State* (1951), 230 Ind. 92, 102 N. E. 2d 225. The Supreme Court of the United States has also passed on this point and has stated:

" '. . . We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act,' . . . ." *Wade* v. *Hunter* (1949), 336 U. S. 684, 689, 690, 69 S. Ct. 834, 837, 93 L. Ed. 974, 978.

Finally, our own statute on this point, Burns' Ind. Stat., §2-2018, reads:

"The jury may be discharged by the court, on account of the sickness of a juror, or other accident or calamnity. . . ."

Obviously, the Legislature in its wisdom intended the above statute to remedy situations such as the one existing in the case at hand so that justice and fairness could prevail. It is difficult to see how the removal of a juror whose mind has been clouded by grief caused by the loss of a loved one could be harmful or prejudicial to appellant. In fact, the contrary is true. As the Alabama Court of Appeals held in *Spelce* v. *State* (1924), 20 Ala. App. 412, 416, 103 So. 694, 698:

"It requires no argument to show that the effect upon the mind of the juror upon receiving information of the death of his mother was to render him incapable of that calm and deliberate consideration and reasoning which is due in the investigation of cases of this importance and magnitude. It was unquestionably the duty of the court to discharge the juror under such circumstances."

Under proposition "D," appellant alleges that it was error for the court to allow the selection of an alternate juror. The record shows that when the State made its motion for an alternate juror, no objection was interposed by appellant before the court's ruling. Also, when appellant did object, he failed to give any reason for his objection. Finally, the record does not show any overruling of appellant's objection. As we have stated before, specific grounds for an objection must be given. *Prough* v. *State* (1957), 236 Ind. 655, 142 N. E. 2d 603. Also, we have held that a ruling must have been made on an objection to preserve error. *Siberry* v. *State* (1896), 149 Ind. 684, 39 N. E. 936. From the above then, we conclude that no error was preserved properly. In addition, we note that the alternate juror was not re-

quired to, and did not, take part in the deliberations, so that any possible error was harmless, and, thus, is not grounds for reversal. *Hedrick* v. *State* (1951), 229 Ind. 381, 98 N. E. 2d 906.

Under the same section of his Argument, proposition "D," appellant also contends that the selection of the alternate juror was accomplished under an *ex post facto* statute. He argues that §4-3325, Burns' Ind. Stat., 1946 Replacement, which provides for selection of alternate jurors, is in conflict with Art. 1, § 24, of the Constitution of Indiana. We do not feel that we have to pass on this matter since no authority is cited to support the contention. Supreme Court Rule 2-17 (f).

Under proposition "E," appellant alleges that the court erred in overruling his motion to require the State to inform him of the names of the witnesses to be called by the State intended to prove its case. To sustain his contention, appellant cites as authorities *Brown* v. *State* (1960), 241 Ind. 14, 158 N. E. 2d 290; *Jencks* v. *United States* (1957), 353 U. S. 657, 77 S. Ct. 1007, 1 L. Ed. 2d 1103; and *Anderson* v. *State* (1959), 239 Ind. 372, 156 N. E. 2d 384. We have examined these cases carefully, and we find that none of them are in point. In fact, the three cases mentioned concern the surrender of reports used by State's witnesses to a defendant for use on cross-examination. Therefore, since appellant has failed to present authorities to uphold his contention, any error in this respect is waived. *White* v. *State* (1958), 238 Ind. 498, 152 N. E. 2d 894; Supreme Court Rule 2-17 (f).

Under proposition "F," appellant cites as error the court's overruling of his motion for separation

of the State's witnesses. We find no error committed here since the separation of witnesses at a trial is granted as a favor and is wholly within the discretion of the trial court. *Butler* v. *State* (1951), 229 Ind. 241, 97 N. E. 2d 492.

In proposition "G," his last and final proposition, appellant contends that the court committed reversible error in its handling of the instructions to the jury.

First, appellant alleges that it was error on the court's part to read to the jury the State's instructions Nos. 2 and 4. Instruction No. 4 dealt basically with the elements of robbery and the burden of proof which the State has to sustain to prove its case. Instruction No. 2 simply advised the jury of the necessity of showing appellant's age by the State in regard to the crime of robbery. Appellant's argument on this point is vague and confusing. Basically, he contends that the instructions unnecessarily emphasize one element of the crime and that the instructions invaded the province of the jury. However, appellant fails to point out what element is over-emphasized and how or which province of the jury is invaded.

Second, appellant contends that it was reversible error for the court to refuse to give his instructions Nos. 1, 3, 4, 6, 8, 9, 10 and 11. Instruction No. 11 called for the court to inform the jury of the materiality of appellant's age. As it was pointed out above, State's instruction No. 2 already had covered this point. Appellant's instruction No. 8 which was of the same nature as his instruction No. 11 was also similarly covered. Again, court's instruction No. 13 dealt with this matter also.

Instructions Nos. 9 and 10 were geared to the propriety of the making of the affidavit under which appellant was charged. From the record, we note that

these instructions were clearly erroneous since there is uncontradicted evidence that the affidavit was sworn to under oath by Cecil Barhydt in the presence of the Prosecuting Attorney.

Instruction No. 3 is erroneous because in effect it calls for a directed verdict which the court had overruled previously.

Appellant's instruction No. 4 deals with the burden of proof which the State must bear in a prosecution which is based on circumstantial evidence and ▉ with what the jury's role is with respect to the credibility of witnesses. In reviewing the record, we find that the court adequately and substantially covered these points in instructions Nos. 10, 12 and 14. Similarly, appellant's instruction No. 1, which in essence dealt with advice to the jury on how to evaluate evidence in regard to appellant's identity and the jury's role in judging the credibility of a witness, was substantially and satisfactorily discussed and covered in the court's instructions Nos. 10 and 14. As this court has held before, it is not error to refuse to give an instruction, notwithstanding it states a correct principle applicable to the case, if it has already been covered substantially or adequately by other instructions given. *Kennedy* v. *State* (1936), 209 Ind. 287, 196 N. E. 316; *McClanahan* v. *State* (1954), 233 Ind. 317, 117 N. E. 2d 749.

Judgment affirmed.

Achor, Arterburn and Landis, JJ., concur.

Jackson, C. J., dissents with opinion to follow.

### DISSENT

JACKSON, C. J.—This dissent will be limited first to the question of the separation of the jury over the objections of the appellant, and second to the question

of double jeopardy occurring by reason of the discharge of the first jury over the objection of the appellant after the jury had been sworn and evidence adduced in the cause.

A thorough search of the case law involved, indicates that the majority opinion in its discussion of *Whitaker* v. *State* (1960), 240 Ind. 676, 168 N. E. 2d 212 makes an erroneous assumption concerning the prevailing view in Indiana concerning separation of the jury during the trial of felonies. The majority opinion relies upon statements made in separate concurring and dissenting opinions in *Whitaker* v. *State, supra.* Such statements have no legal basis in Indiana for establishing precedent. The attempt to construe a statute, where no words of the legislature indicate a difference in treatment of different classes of felonies in regard to separation of the jury, is in violation of the first principle of criminal statutory construction; a criminal statute will be construed strictly in favor of the criminal defendant. All the statute states is that where the jury is allowed to separate, they will be properly admonished by the Court, but the common law as developed in Indiana states that separation will not be allowed where it is specifically objected to by the defendant. *Jones* v. *The State* (1831), 2 Blackf. 475; *Anderson* v. *The State* (1867), 28 Ind. 22; *Quinn* v. *The State* (1860), 14 Ind. 589. All authorities recognize that this rule in Indiana does not differentiate between capital and non-capital trials. Therefore, statements such as, "[p]ermitting the jury to separate during trial over defendant's objection constitutes reversible error, . . . ." [Ewbank's Indiana Criminal Law, §364, citing authority], say nothing concerning the nature of the offense being tried, but instead consider this a general rule. The statements in the separate concurring and dissenting opin-

ions in *Whitaker* v. *State, supra,* must, therefore, due to the lack of valid authority in support be considered, at best, dicta. The discussion of the trial judge's discretionary power has no place in this opinion since it has been held, by the weight of authority in Indiana, that a defendant has a right, when he properly makes such request, to keep the jury together during trial, a right which the trial court may not abuse upon pain of committing reversible error. For the reason above stated the appellant's motion for a new trial should be granted.

The second point concerns the question of double jeopardy resulting from the discharge of the legally impanelled jury over the objection of the appellant. *Armentrout* v. *State* (1938), 214 Ind. 273, 15 N. E. 2d 363, which is not a capital case, contains a most lucid exposition of the law concerning double jeopardy and when discharge is mandatory.

Judge Roll in that opinion stated succinctly, at page 275,

> "Jeopardy is the peril and danger to life or liberty in which a person is put when he has been regularly and sufficiently charged with the commission of a crime; has been arraigned and pleaded to such charge; has been put upon his trial before a tribunal properly organized and competent to try him for the offense charged, and a jury has been impanelled from persons competent to sit on the trial and duly sworn to try the cause and charged with due deliverance. It is undisputed and the motion filed for a discharge clearly shows that all of the above requisites were present in this case. The only question presented was whether or not the discharge of the jury under the circumstances in this case would prevent jeopardy from attaching. Wharton's Criminal Law 12ed, vol. 1, §395, p. 548, says:

> "After the trial of a criminal charge has been duly entered upon, before a court regularly organized, and having jurisdiction of the subject

matter of the charge, and competent to try the defendant, on an indictment sufficient to support any judgment that may be rendered, with a lawful jury properly selected and sworn, a discharge of such jury, without the consent of the accused, and without the existence of a state of facts under which the law provides for a discharge of a jury without a verdict, is equivalent to an acquittal of the defendant of the charge, and he cannot thereafter be tried thereon. The only causes for which a jury impanelled and sworn to try an accused on a criminal charge can be discharged by the court without a verdict are: (1) Consent of the prisoner; (2) Illness of (a) one of the jurors, (b) the prisoner, or (c) the court; (3) Absence of a juryman; (4) Impossibility of the jurors agreeing on a verdict; (5) Some untoward accident that renders a verdict impossible; and (6) Extreme and overwhelming physical or legal necessity.'

"In the case of *State* v *Wamire* (1861), 16 Ind. 357, the court said (p. 357):

" 'The following points of criminal law are settled in this State: 1. If the Court, without the consent of the defendant, discharged the jury to whom his cause has been submitted, before verdict, no imperious necessity rendered such discharge necessary, it works an acquittal of the defendant; . . . .'

"In *Miller* v. *State* (1856), 8 Ind. 325, 327, this court said:

" 'The discharge of the jury must result from necessity, a necessity determined by law, or it will release the prisoner.' "

In the case at bar no imperious necessity required the discharge of the jury. The amenities and proprieties of the situation could have been observed without discharging the jury. It is obvious that nothing in the discharge of the jury of this cause was predicated on grounds determined to be of legal necessity. It must be noted that *Holt* v. *State* (1945), 223 Ind. 217, 59 N. E. 2d 563, relied upon by the majority as authority for sustaining the State's demurrer, reaffirmed *Ar-*

*mentrout* v. *State, supra,* but departed from the general rule because the defendant in *Holt* v. *State, supra,* did not object to the discharge of the jury as did the appellant in the case at bar.

As to the discussion in the majority opinion that the Supreme Court of the United States has "passed on this point", we must take exception with the statement and the majority reliance on the case of *Wade* v. *Hunter* (1949), 336 U. S. 684, 69 S. Ct. 834, 93 L. Ed. 974. *Wade* v. *Hunter* dealt with a Court Martial proceeding in which it was determined by the Supreme Court that tactical conditions of an army during war, and under changing battle conditions, were conditions of imperious necessity which would allow a mistrial to occur without jeopardy accruing to the defendant. It was stated in that case that the public interest will sometimes subordinate the constitutionally guaranteed rights, but always in the background of all Supreme Court opinions in this area are the words of Justice Story in *United States* v. *Coolidge,* 25 Fed. Cas. 622 (No. 14858), (C. C. D. Mass. 1815), which were that discretion to discharge the jury before it has reached a verdict is to be exercised "only in very extraordinary and striking circumstances." Such a position was adhered to in *Downum* v. *United States* (1963), 372 U. S. 734, 10 L. Ed. 2d 100, in which cases such as *Wade* v. *Hunter, supra,* were distinguished as being extreme and not indicative of the general rule. The Supreme Court of the United States reversed in *Downum* v. *United States, supra,* with the closing words at page 104, "[w]e resolve any doubt in favor of the liberty of the citizen, rather than exercise what would be an unlimited, uncertain and arbitrary judicial discretion."

For these reasons and for the reason that the trial court could have employed other means, such as a con-

tinuance, there can be no showing that the discharge was made on sound legal grounds of an imperious nature, and therefore, the judgment should be reversed and cause remanded with instructions to grant appellant's motion for a new trial.

NOTE.—Reported in 209 N. E. 2d 254. Dissent in 210 N. E. 2d 373.