LARRY E. KING *v.* STATE OF INDIANA.

[No. 1-174A9. Filed July 29, 1974.]

*Robert E. Marshall,* of Shelbyville, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert E. Dwyer,* Deputy Attorney General, for appellee.

LOWDERMILK, J.—The defendant-appellant was charged by affidavit, tried by jury and convicted of the lesser included offense of entering to commit a felony at Brownie's Marine Sales in Fairland, Indiana, in one count of the affidavit and theft in the second count, for which he received concurrent sentences pursuant to the penalty provided by the statute for said offenses. Judgment was passed and defendant sentenced accordingly.

The evidence most favorable to the State is that the appellant and two companions, at about 2:40 o'clock A.M. on November 29, 1972, drove a 1956 black Oldsmobile automobile near a Clark service station located at the corner of Prospect Street and South Sherman Drive in Indianapolis. At this time city police officers Snider and Garver were on routine patrol and observed the appellant and two companions at the Clark service station while the officers remained in their car and out of appellant's view, staying hidden behind a Gulf station kat-a-corner across the street from the Clark station.

The officers had been given in their roll call prior to going on duty information concerning prior hold ups at Indianapolis service stations, including another Clark station. The information concerned three young, white males who were driving an older model black Oldsmobile. The officers were also given the same basic information over their police radio and were on a general look out for the above described individuals and car.

The officers observed the appellant and his two companions without the suspects' knowledge for approximately five minutes. During this time they observed a companion, Michael M. Wouster, attract the attention of the service station attendant, Alva Scruggs, whom the officers knew personally. Wouster directed Scruggs to a soft drink display. At this time two other individuals were observed entering the service station office and looking around. They could be seen through the glass window. They were then observed leaving the office, walking around their automobile several times and glancing toward the street. While this was going on, Wouster was still conversing with Scruggs and walking from one side of the station to the other with him. The officers believed the conduct they were observing was an attempt to distract the attention of the station attendant and aroused their suspicions to the point they decided to and did investigate.

In investigating the officers pulled across the street immediately to the rear of the black Oldsmobile and stopped some five feet behind it. At that time they observed the Oldsmobile had an altered temporary dealer's plate on it. They ran a check and found that the car had not been reported stolen but nevertheless were not able to determine its owner. They also observed when they drove up and stopped to the rear of appellant's car appellant and the two companions immediately attempted to enter their automobile. The officers testified that at the time they drove from the Gulf station to the Clark station they had the intention of stopping the defendant and investigating the situation but had no intent at that time to conduct a search or a pat-down. Officer Garver talked with station attendant Scruggs, who informed the officer he was glad to see the police. Although appellant and his two companions had not threatened him he was afraid they were going to rob him, as he had seen a knife on one of the boys as he bent over. He further told the officer when the police car pulled into the station the three individuals exclaimed

"Let's get the hell out of here" and at that time started to get in their car.

Officer Garver testified that he observed something he thought was a gun in appellant's pocket and upon checking found a 5″ hunting knife and a 9 millimeter bullet; Garver then checked a companion, Jesse Toney, and discovered a loaded .38 calibre pistol attached to a belt on his right hip. After this the three young men were placed under arrest, handcuffed and again searched. Officer Garver testified that he was acting for his own protection when he saw what he thought was a pistol in appellant's pocket. He further testified that based on his experience in other situations similar to the one in the case at bar he believed it was necessary to check the appellant for any possible dangerous weapons. The discovery of the hunting knife and bullet further led him to believe that his safety required a pat-down of the other two occupants of the Oldsmobile. The gun found on Jesse Toney was discovered by merely opening his coat and observing the pistol.

Appellant in his brief states that the entire basis of this appeal is his contention that the original search of the appellant and his companions prior to their arrest was illegal. He further contends that all evidence, both testimonial and demonstrative, is the result of an illegal search and seizure and any such evidence should have been inadmissible under the doctrine of fruits of an illegal search. Prior to trial appellant filed a motion to suppress all evidence which was discovered following the alleged unlawful search and seizure. Said motion was overruled by the trial court after a hearing and it is from this ruling that appellant contends that reversible error was committed.

Appellant, at trial, again objected to all evidence and testimony which followed the alleged illegal search and seizure. Appellant admits in his brief that all of the issues raised in this appeal and in his motion to correct errors are based on whether the original search of the appellant was illegal.

Appellant urges that where the items of the subject of the motion to suppress were taken from appellant's possession without a warrant the burden is on the State at the suppression hearing and the trial of the cause to show that the police action fell within one of the exceptions to the rule requiring a warrant prior to a search and seizure, e.g. search incident to a valid arrest. To support this position he relies on *Smith* v. *State* (1971), 256 Ind. 603, 271 N.E.2d 133, 135.

Appellant further contends that the items taken from his person and his companions' persons and the automobile in which they were riding and the residence which was later searched in Indianapolis should be suppressed as to appellant, pursuant to the rulings handed down in *Paxton* v. *State* (1970), 255 Ind. 264, 263 N.E.2d 636.

This court is of the opinion that the search was justified as the officers did have reasonable grounds under the evidence hereinabove set out to investigate the appellant and his two companions and that there was a narrowly drawn authority to permit a reasonable search for weapons for the protection of the officer who from said evidence had reason to believe that he was dealing with an armed and dangerous individual, even though at that time he may not have had probable cause to arrest the individual for a crime.

In the case of *Terry* v. *Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, the United States Supreme Court held that governmental interests in effective and efficient law enforcement may justify, in appropriate circumstances, police officers in approaching individuals for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. At page 23 in *Terry, supra,* the Court went on to say:

"Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an

armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. Cf. *Beck* v. *Ohio,* 379 U.S. 89, 91 (1964) ; *Brinegar* v. *United States,* 338 U.S. 160, 174-176 (1949) ; *Stacey* v. *Emery,* 97 U.S. 642, 645 (1878). And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience. Cf. *Brinegar* v. *United States, supra.* 392 U.S. at 27."

The rationale of *Terry* v. *Ohio, supra,* has since been applied in the case of *Adams* v. *Williams* (1972), 407 U.S. 143, 92 S.Ct. 1921, 31 L.Ed.2d 612, wherein the court held that the purpose of the limited search for weapons was allowable, based on the officer's experience in such matters, not to discover evidence of a crime, but rather to assure the officer's safety when he had reason to believe that the suspect might be armed. It is our opinion that the police officers, based on their knowledge, observations, and experience, had sufficient cause to investigate the situation in the Clark station and to make a limited search of the appellant and his companions for weapons. Thus, the search was lawful under *Terry* v. *Ohio, supra,* and there was no illegal search and seizure. It is also our opinion that the limited search of the appellant by the police officers would be justified under the evidence, based on the Indiana statute dealing with such situations, which is IC 1971, 35-3-1-1, Ind. Ann. Stat. § 9-1048, *et seq.* (Burns 1973 Supp.).

Having found that the limited search of the appellant and his companions prior to their arrest was proper, appellant's argument that all subsequent evidence which was based on the original search would be inadmissible because of the original illegal search, is untenable. Additionally, it must be noted that the items which were

discovered in the black Oldsmobile by the officers were not the result of an illegal search and seizure. The evidence discloses that the items taken from the car and introduced into evidence were in plain view of the officers as some of the items were in the floor and back seat of the car and the other guns were visible to the officers in the trunk of the automobile, since the trunk was partially open at the time of the stop. It is well settled that items discovered in plain view are not the products of a search and seizure. *Miller* v. *State* (1973), 156 Ind. App. 140, 295 N.E.2d 632.

The evidence discloses further that one of the trio arrested signed a written confession wherein he disclosed the name of one Larry Hall and gave his address and suggested that the officers go there and they would find additional evidence of loot taken in crimes.

Officers called at the named residence, found Mr. Hall, who had a butcher knife secreted in one of his boots, caused them no trouble and voluntarily authorized their searching the premises and pointed out to them the specific room where the bounties of crime were stored and recovered by the officers.

Appellant contends that the search of the Hall property was illegal and the loot recovered there should have been suppressed under the tainted fruit doctrine and relies on *Smith* v. *State, supra.*

However, since we have determined that there is no basis for the tainted fruit doctrine, appellant's objection is necessarily muted. Additionally, since the evidence discloses that Larry Hall pointed out the evidence to police officers, no illegal search and seizure took place. *McCoy* v. *State* (1960), 241 Ind. 104, 115, 170 N.E.2d 43, 48.

Finding no reversible error the judgment of the trial court is affirmed.

Robertson, P.J. and Lybrook, J., concur.

NOTE.—Reported at 314 N.E.2d 788.